STATE ex rel. UNION PACIFIC RAILROAD COMPANY and Missouri Pacific Railroad Company, Relators,

v.

Honorable Robert H. DIERKER, Judge, Circuit Court, St. Louis City, Respondent.

No. 80014.

Supreme Court of Missouri, En Banc.

Jan. 27, 1998.

Rehearing Denied Feb. 24, 1998.

Dan H. Ball, James W. Erwin, David A. Dick, St. Louis, for Relators.

Joseph L. Bauer, Jr., Michael L. Nepple, Leonard P. Cervantes, St. Louis, for Respondent.

Jerome J. Schlichter, Steven L. Groves, Nelson G. Wolff, James Holloran, Holloran Law Firm, Robert F. Ritter, Gary & Ritter, P.C., St. Louis, H. Chris Christy, N. Little Rock, for Amicus Curiae.

COVINGTON, Judge.

This Court issued a preliminary order in prohibition to determine the scope of federal pre-emption under the Railway Labor Act (RLA), 45 U.S.C. secs. 151 et. seq. (RLA), as it might affect respondent's orders prohibiting relators, Union Pacific R.R. Co. and Missouri Pacific R.R. Co. (the railroad), from attempting to enforce provisions of collective bargaining agreements. The preliminary order is made absolute.

Plaintiffs in the underlying suit are employed by the railroad and in significant respects are representative of several hundred plaintiffs who have filed negligence suits for personal injuries under the Federal Employers' Liability Act (FELA ), 45 U.S.C. secs. 51–60, against their employers. The labor unions of which plaintiffs are members are parties to collective bargaining agreements with the railroad.

Plaintiff Harper filed an FELA suit on June 7, 1996, in the circuit court of the City of St. Louis seeking damages for personal injuries he allegedly sustained at work on April 17, 1996. Although Harper remains an employee of the railroad, he has not worked since May of 1996. On May 14, 1996, before Harper filed his FELA action, the railroad, by means of a form letter presented to him, directed Harper to provide a "doctor's note" documenting the following information: (1) his current medical condition; (2) his current medical treatment plan; (3) the date he could be expected to return to work in his normal duties or in a restricted capacity; and (4) the expected work restrictions, if any, recommended by his treating doctor for any return to work in a full or restricted capacity. On June 1, 1996, again before Harper filed his FELA action, he received a notice of a formal investigation and disciplinary hearing set for June 4, 1996, regarding his alleged failure to comply with the previous directive. On July 2, 1996, after filing his FELA action, Harper filed his motion for a protective order and for sanctions to prevent the railroad from requiring him to provide a "doctor's note" or thereafter be subjected to an inves-

tigation and disciplinary hearing. The railroad's formal investigation and disciplinary hearing was never held, and the court did not immediately hear Harper's motion for protective order. Seven months later, on February 3, 1997, the railroad sent directly to Harper (not to his attorney), another letter similar to the May 14, 1996, form letter that required him to provide his supervisor with a "doctor's note" obtained within the past thirty days. In response, Harper submitted a "doctor's note" dated November 22, 1996. On February 14, 1997, the railroad sent Harper another letter that noted that the information he had submitted had not been obtained during the past thirty days. This letter directed Harper to comply with the previous directive to provide information obtained within the prior thirty days. Harper did not submit any additional "doctor's notes." On February 26, 1997, respondent heard Harper's motion for protective order originally filed on July 2, 1996.

The facts in Plaintiff Stewart's case vary slightly from those in Harper's case. Stewart also filed an FELA suit in the same court on August 29, 1996, for injuries he allegedly sustained at work on January 12, 1996. Stewart is currently an employee of the railroad, but he is not actively working. After his alleged injury in January 1996, Stewart worked regularly through April 1996, when he began missing work. Beginning with a letter dated October 7, 1996, after Stewart had filed his FELA action, the Railroad sent Stewart letters approximately every thirty days extending his medical leave of absence and requiring him to continue to provide updated "doctor's notes" to determine his fitness for duty and to support his leave of absence. The railroad, upon receiving the required information from Stewart's doctor, repeatedly extended his leave of absence for thirty day periods. In a letter dated December 18, 1996, however, the railroad directed Stewart to contact his supervisor to arrange for a fitness for duty evaluation. On January 6, 1997, the railroad sent Stewart a letter to notify him that an "FCE," a test administered by a physical therapist or other health care provider to gather information used to determine a person's ability to perform various job-related tasks, had been scheduled for

him for January 16, 1997. In response, Stewart filed his motion for a protective order to prevent the railroad from requiring him to attend the FCE or thereafter be subjected to an investigation based upon his failure to attend. On January 15, 1997, respondent heard Stewart's motion for protective order.

Plaintiffs' motions for protective orders asked the court to prevent the railroad from requiring them to provide medical documentation or to attend an FCE or thereafter be subjected to an investigation for failure to comply with the directives.

On March 17, 1997, respondent, citing the court's authority to control actions of the parties within the discovery arena, issued the challenged Rule 56.01 protective order against the railroad made applicable to both plaintiffs' cases. The order prohibits the railroad from directly communicating with plaintiffs concerning their health or employment status, from requiring plaintiffs to attend physical ability tests or other medical examinations, from disciplining plaintiffs for failing to comply with such requests, or from altering their employment status while their FELA suits are pending, unless it is for affirmative misconduct. Respondent expressed his intent to adhere to a uniform rule applicable in the circuit court of the City of St. Louis in all FELA cases: upon request by a plaintiff, a similar order will be issued unless the railroad can show affirmative misconduct or fraud on the court by the plaintiff. Relying in substantial part upon the exclusive jurisdiction provisions of the RLA, and upon affidavits that demonstrate that it is the regular practice of the railroad to require a medical evaluation for employees injured on or off the job, the railroad sought a writ of prohibition.

■ The issue is whether the trial court exceeded its jurisdiction in fashioning relief through a Rule 56.01 protective order applicable to numerous FELA cases filed in the circuit court of the City of St. Louis. Resolution of the issue depends in substantial part upon a determination of whether the RLA's mandatory arbitration provision confers exclusive jurisdiction over the dispute upon an

RLA adjustment board. 45 U.S.C. sec. 153 First (i) and Second.

The power of the United States Congress to pre-empt state law derives from the Supremacy Cause of Article VI of the United States Constitution. Whether a federal law pre-empts a certain state action is a question of congressional intent. *Hawaiian Airlines Inc. v. Norris*, 512 U.S. 246, 252, 114 S.Ct. 2239, 2243–44, 129 L.Ed.2d 203 (1994). "The purpose of Congress is the ultimate touchstone." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985) (quoting *Retail Clerks Int'l. Ass'n, Local 1625 AFL–CIO v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 222–223, 11 L.Ed.2d 179 (1963)).

■ The RLA provides a comprehensive framework for the resolution of labor disputes in the railroad industry. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562, 107 S.Ct. 1410, 1413–14, 94 L.Ed.2d 563 (1987). The RLA establishes mandatory administrative procedures that govern two classes of labor disputes. *Hawaiian Airlines*, 512 U.S. at 252, 114 S.Ct. at 2243–44. Case law employs the terms "major disputes" and "minor disputes" to distinguish the two classes. "Major disputes," although not relevant here, arise "out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions." *Atchison*, 480 U.S. at 562, 107 S.Ct. at 1413–14; *see also* 45 U.S.C. sec. 151(a), 152 Seventh and sec. 156. "Minor disputes," which are relevant in this case, compose the second class of disputes. Minor disputes "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Hawaiian Airlines*, 512 U.S. at 252–3, 114 S.Ct. at 2243–44; *see also* 45 U.S.C. sec. 151(a), sec. 152 Sixth, 153 First (i). Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Trainmen v. Chicago River & Indiana R.R. Co.*, 353 U.S. 30, 33, 77 S.Ct. 635, 636–37, 1 L.Ed.2d 622 (1957). Succinctly stated, "major disputes seek to create contractual rights, minor disputes to enforce them." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n.*, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989).

■ Courts look beyond the four corners of a collective bargaining agreement to determine what is a major or a minor dispute. In *Consolidated Rail*, where the only issue involved whether a controversy was a major or minor dispute, the United States Supreme Court determined that although neither party could point to an express provision of the collective bargaining agreement for support, the power to conduct return-from-leave physical examinations was an implied collective bargaining agreement term. *Consolidated*, 491 U.S. at 311–312, 109 S.Ct. at 2484–85. The Court noted that collective bargaining agreements may include implied terms that can be interpreted from the parties' "practice, usage, and custom." *Id.* at 311, 109 S.Ct. at 2484–85. The Court also observed that a collective bargaining agreement "covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant." *Id.* (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–579, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960)); *see also Monroe v. Missouri Pacific R.R. Co.*, 115 F.3d 514 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 413, 139 L.Ed.2d 316 (1997)(finding that the collective bargaining agreement's implied terms provided the railroad with its right to compel an employee to undergo a physical examination); *Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir.1996)(a "plaintiff's claims are minor disputes if they depend not only on a right found in the CBAs, but also if they implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship."). In *Hawaiian Airlines*, the United States Supreme Court discussed the fact that the terms of a collective bargaining agreement can be inferred from "norm[s] that the parties have created but have omitted from the collective bargaining agreement's *explicit* language . . . ." [emphasis in original] *Id.* at 264, 114 S.Ct. at 2249–50; *see also Allis–Chalmers*, 471 U.S. at 215–16, 105 S.Ct. at 1913–14 (collective bargaining agree-

ments may contain implied as well as express terms).

Minor disputes must be adjudicated under the RLA mechanisms. *Hawaiian Airlines*, 512 U.S. at 253, 114 S.Ct. at 2244. The RLA's statutory procedures for resolving minor disputes provide that these disputes must initially be addressed through a railroad's internal dispute resolution processes. *See* 45 U.S.C. sec. 184. If not settled, minor disputes must then be submitted to a division of the National Railroad Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties. *Consolidated Rail*, 491 U.S. at 303, 109 S.Ct. at 2480–81; *see also* 45 U.S.C. sec. 152 Sixth and sec. 153 First (i) and Second & sec. 184. Consequently, if the conflicts here are minor disputes, they must be resolved through the RLA's exclusive arbitral mechanisms, and plaintiffs' claims for protective orders are pre-empted by the RLA. *Hawaiian Airlines*, 512 U.S. at 253, 114 S.Ct. at 2244.

The purpose in passing the RLA was to develop a unified body of federal labor law and to encourage arbitration. *Atchison*, 480 U.S. at 565, 107 S.Ct. at 1415–16 *Allis–Chalmers*, 471 U.S. at 211, 220, 105 S.Ct. at 1911, 1915 (discussing policies of section 301 pre-emption under the Labor Management Relations Act (LMRA) that was determined as identical to the purposes behind the RLA pre-emption in *Hawaiian Airlines*, 512 U.S. at 263 n. 9, 114 S.Ct. at 2249 n. 9. The United States Supreme Court has noted that these purposes can be accomplished only by ensuring that parties to a collective bargaining agreement cannot avoid the mandatory arbitration procedures by reclassifying an action that otherwise involves a breach of a duty assumed in the agreement. *Allis–Chalmers*, 471 U.S. at 219–220, 105 S.Ct. at 1914–16; *Hawaiian Airlines*, 512 U.S. 246, 263 n. 9, 114 S.Ct. 2239, 2249 n. 9, 129 L.Ed.2d 203. To achieve these goals, therefore, the RLA provides that minor disputes that grow out of the interpretation and application of the agreement will be resolved only through RLA mechanisms. This guarantees that agreements are enforced by arbitrators who are experts in "the common law of [the] particular industry." *Consolidated*, 491 U.S.

at 310, 109 S.Ct. at 2484 (quoting *Steelworkers*, 363 U.S. at 579, 80 S.Ct. at 1351).

The policy of fostering uniform, certain adjudication of disputes over the meaning of collective bargaining agreements cannot be achieved unless an arbitrator, not the court, has the responsibility to interpret the labor contract in the first instance. *See Allis–Chalmers Corp.*, 471 U.S. at 220, 105 S.Ct. at 1915–16 (discussing policies of section 301 pre-emption under the RLA's counterpart, the Labor Management Relations Act ). If the resolution of a dispute purportedly having a remedy in state law depends upon the meaning of a collective bargaining agreement, the application of state law might lead to inconsistent interpretations of the agreement since there could be differing laws among the states. As a consequence, if the resolution of a dispute requires the interpretation of a collective bargaining agreement, the RLA's mandatory arbitration provision has been interpreted to eliminate the possibility of inconsistent interpretations of the agreement by providing that the application of state law is pre-empted by the RLA and that the dispute must be referred to the proper mandatory adjustment board. *See Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 324–25, 92 S.Ct. 1562, 1565–66, 32 L.Ed.2d 95 (1972). In these instances, the court being asked to apply the state law would not possess subject matter jurisdiction. State law, therefore, is pre-empted, and federal labor law principles, which are uniform throughout the nation, are employed to resolve the dispute. If, however, the dispute can be resolved without interpreting the agreement, the claim is "independent" of the agreement and is not pre-empted. *Hawaiian Airlines*, 512 U.S. at 262, 114 S.Ct. at 2248–49 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410, 108 S.Ct. 1877, 1883–84, 100 L.Ed.2d 410 (1988)). Merely referring to the agreement does not defeat state court subject matter jurisdiction. "The bare fact that a collective-bargained agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S.Ct. 2068, 2078–79, 129 L.Ed.2d 93 (1994); *see also Lingle*, 486 U.S. at 413 n. 12, 108 S.Ct. at

1885. Unless plaintiffs can establish that the employer's exercise of any rights it may have under the collective bargaining agreement is a direct violation of a specific law that confers an independent right upon plaintiffs, however, exclusive jurisdiction over the dispute lies with the National Railroad Adjustment Board. *Hawaiian Airlines,* 512 U.S. at 262–3, 114 S.Ct. at 2248–49.

The purposes behind the mandatory arbitral mechanisms of the RLA also apply in cases where there is an allegedly independent right arising out of another federal statute, rather than a state law. The United States Supreme Court, therefore, applies a similar pre-emption analysis in cases where a party claims that an independent right arising out of another federal statute prevents the RLA's mandatory arbitration procedures from pre-empting the matter. In *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563, for example, a case alleging that the RLA pre-empted the bringing of an FELA cause of action, the railroad argued that a railroad employee's federal FELA action was pre-empted and the employee's sole remedy was through RLA arbitration because the employee's alleged injury resulted from conduct that was subject to the collective bargaining agreement. The United States Supreme Court confirmed that minor disputes subject to mandatory RLA arbitration are those that involve duties and rights created or defined by the collective bargaining agreement. *Id.* at 565–66, 107 S.Ct. at 1415–1416. Although the employee's claim was based on a right arising out of a federal statute (FELA), the Court applied the same pre-emption analysis it had applied in cases involving possible RLA pre-emption of a right arising out of state law. *Atchison,* 480 U.S. at 565, 107 S.Ct. at 1415–16. Applying this pre-emption analysis, the Court rejected the railroad's argument that the entire FELA action was pre-empted by the RLA, emphasizing that the rights derived from the FELA were independent of the collective bargaining agreement. *Id.*

Missouri is not without precedent in deciding whether the dispute in this case is a minor dispute. In *Brown v. Missouri Pacif-ic R.R. Co.,* 720 S.W.2d 357 (Mo. banc 1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987), this Court addressed an employee's claims that requests for physical examinations were made in bad faith. The plaintiff sued the railroad under a state law theory of prima facie tort, alleging harassment in retaliation for filing an FELA suit. The alleged harassment was the railroad's insistence that the plaintiff submit to a physical examination to determine whether he was able to work. *Id.* at 357–58. This Court found that the railroad's "request for physical examination was clearly the employer's prerogative" and that the employee's complaints about retaliatory harassment for the railroad's request for a physical examination should be resolved by the compulsory arbitration tribunal. *Id.* at 360–361. As a consequence, the plaintiff's state law action was pre-empted by the RLA. *Id. See also Landfried v. Terminal R.R. Ass'n,* 721 F.2d 254 (8th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984)(railroad disciplinary action against employee, even if motivated by a desire to retaliate against an FELA claimant, is within the exclusive jurisdiction of the National Railroad Adjustment Board because the collective bargaining agreement provides the source for the employee's right not to be discharged).

Phrased in terms of the language of the foregoing pre-emption analysis, this case is subject to the RLA's mandatory arbitration provision and within the exclusive jurisdiction of an arbitration board of the RLA. Resolution of this dispute depends upon interpretation of the meaning of the collective bargaining agreement. This is because it is necessary to interpret the implied terms of plaintiffs' collective bargaining agreements as exhibited by the company medical rules and the railroad's regular practices to determine whether the railroad has a right to issue such directives or whether plaintiffs have a right to be free from them. Because the dispute is one that must be resolved by interpreting the collective bargaining agreement, it is a minor dispute that must be referred to an RLA adjustment board established pursuant to the collective bargaining process.

Respondent presents various arguments asserting that the plaintiffs' rights in these cases should be deemed independent of the collective bargaining agreement, so as to defeat the exclusive arbitral mechanisms of the RLA. Respondent contends that since the Missouri Rules of Civil Procedure govern discovery in an FELA case, the Rules grant the court independent authority that does not depend on the terms of the collective bargaining agreement. Respondent is correct in his assertion that the Rules of Civil Procedure control discovery in an FELA suit. Unless respondent can point to a specific Rule that confers an independent state law right upon plaintiffs in this case, however, this Court declines to comment on the notion that the Rules generally provide the plaintiffs with independent rights.

In addition to the general argument relative to the discovery rules, respondent claims that Rule 60.01 confers the independent rights to be free from any employer requests relating to the employees' physical conditions or from subsequent disciplinary actions during the pending FELA action and to be free from requirements that the employees attend an FCE. The scope of Rule 60.01 is not so broad. Rule 60.01 establishes the procedure through which a litigant may obtain an examination of his opponent where the opponent's physical condition is at issue. Rule 60.01 does not bestow any rights upon the examinee other than the right to receive a copy of the report of the examination procured by the opposing party.

In support of respondent's foregoing arguments that the Rules create an independent right to be free from employer directives regarding the employees' physical conditions during the pending FELA action, plaintiffs rely on cases from federal district courts in other states; however, the cases cited by plaintiffs are not more persuasive than our own federal decisions of the United States District Court for the Eastern District of Missouri or those of other federal districts that support the contrary position. *See Boncouri v. Union Pacific R.R. Co.*, 981 F.Supp. 1271 (E.D.Mo.1997) (denying FELA plaintiff's motion for protective order to prohibit railroad from investigating plaintiff finding that issues involved in motion were minor disputes that must be resolved through the RLA mechanisms); *Downing v. Missouri Pacific R.R. Co.*, 4: 96CV0284 LOD (E.D.Mo.1996)(order denying plaintiffs' motion to remand)(FELA plaintiff petitioned for a TRO to prevent the railroad from requiring him to attend a "fitness for work" physical or from disciplining him for failure to attend. The court issued an order finding pre-emption determinative of the issue because resolution of the dispute required interpretation and enforcement of the collective bargaining agreement); *see also Williamson v. Missouri Pacific R.R. Co.*, 4: 96CV1113 ERW (E.D.Mo.1996)(order dismissing plaintiff's motion to remand)(although the issue was declared moot because plaintiff withdrew his motion for protective order requesting freedom from a "fitness for duty" examination and a subsequent investigation, the court noted that resolution of the issue would have required an interpretation of the collective bargaining agreement implicating the mandatory RLA mechanisms).

Plaintiffs in the underlying case, arguing on behalf of respondent, make additional arguments in support of respondent's order. Plaintiffs contend that because the formal collective bargaining agreement document does not include the specific terms and conditions at issue here, resolution of the dispute does not depend upon interpretation of the collective bargaining agreement; therefore, the RLA does not pre-empt these matters. Plaintiffs' position disregards, however, the law that provides that if resolution of an issue requires interpretation or application of the express or implied terms of a collective bargaining agreement, which include practices, procedures, implied authority, or codes of conduct, the RLA pre-empts the resolution of that issue. *Fry v. Airline Pilots Ass'n,* 88 F.3d 831, 836 (10th Cir.1996); *Brown v. Missouri Pacific R.R. Co.,* 720 S.W.2d at 361. Here, as noted above, resolution of the dispute depends upon interpretation of the meaning of the collective bargaining agreement because it is necessary to interpret the implied terms of the agreement as exhibited by the company medical rules and the railroad's regular practices to determine whether the railroad has a right to issue directives

such as in this case or whether plaintiffs have a right to be free from them.[1]

Plaintiffs maintain that the resolution of the dispute requires a "purely factual inquiry" of the railroad's conduct that is independent of the collective bargaining agreement. Plaintiffs make a related argument that the RLA does not pre-empt so long as the face of the plaintiffs' claims do not allege a breach of the express terms of the collective bargaining agreement. Plaintiffs claims are mistaken. Irrespective of how the disputes in this case may be labeled, they are substantively "minor disputes," pre-empted by the RLA. *See Brown v. Missouri Pacific R.R. Co.,* 720 S.W.2d at 360. Contrary to plaintiffs' assertions, their claims do not involve purely factual questions, and they do require interpretation of the collective bargaining agreement. Plaintiffs claims are inextricably related to matters that depend upon interpretation of the collective bargaining agreement. This finding, however, does not leave all plaintiffs without remedies in the event of a finding of bad faith in an individual plaintiff's case, see *infra.*

Plaintiffs also allege that 45 U.S.C. sec. 55 and Missouri Rule 4.2 confer rights independent of the collective bargaining agreement. To support their arguments, plaintiffs analogize to cases involving alleged violations of 45 U.S.C. section 60 where courts, not the RLA adjustment boards, possess exclusive jurisdiction. Section 60 prohibits the railroads from interfering with persons who attempt to provide information regarding another's FELA claim. This section applies, however, only to confer independent rights upon non-FELA claimants who provide information for other employees' FELA claims. *Bielicke v. Terminal R.R. Ass'n,* 30 F.3d 877, 878 (7th Cir.1994). Respondent specifically and correctly found that the section 60 cases do not control. Section 60 does not confer an independent right upon the FELA plaintiffs.

Comparing their claims to the cases in which section 60 has been determined to confer an independent right on non-FELA claimants, plaintiffs maintain that 45 U.S.C. section 55 provides plaintiffs with rights that are independent of the collective bargaining agreement. Section 55 prohibits a railroad from using any contract, rule, or device to exempt itself from any liability created by the FELA. Plaintiffs argue that protective orders are necessary to prevent the railroad from reducing its FELA liability in violation of section 55 by firing its employees (allegedly for failing to comply with the railroad's requests for "doctor's notes" and to attend FCEs) to eliminate the employees' damage claims for future wage loss. Respondent, however, expressly rejected this argument, stating that a discharge by the railroad does not necessarily terminate the employees' claims of future wage loss. Respondent's rejection of the argument is well grounded in law. *See Martinez v. Union Pacific R.R. Co.,* 82 F.3d 223, 227–8 (8th Cir.1996).

Plaintiffs allege that Rule 4.2, a rule of professional conduct related to contact with represented parties, also confers rights independent of the collective bargaining agreement. Plaintiffs' allegation is conclusory in nature, the facts alleged in support being indistinct. The allegation does not require response.

Plaintiffs also present arguments touching upon the accuracy of respondent's factual findings and a procedural issue relative to Rule 92. Because this Court finds that resolution of this dispute requires interpretation of the collective bargaining agreement, it is not necessary to address plaintiffs' additional arguments.

---

1. Plaintiffs appear to make another argument. Although plaintiffs' contentions are far from clear, they are without merit to the extent that they argue that pre-emption analysis cannot apply here because plaintiffs are not attempting to maintain a separate state "cause of action" with their request for a protective order. In *Livadas v. Bradshaw,* 512 U.S. 107, 117–132, 114 S.Ct. 2068, 2074–83, 129 L.Ed.2d 93 (1994), a case involving the National Labor Relations Act (the federal law counterpart to the RLA for industries not covered by the RLA), the United States Supreme Court held that the National Labor Relations Act pre-empted a state's *practice* of construing all state statutes as inapplicable to employees whose employment was governed by collective bargaining agreements. *Livadas* resolved the issue of whether pre-emption can apply to matters other than those that establish a "cause of action." *Livadas* involved the pre-emption of a state law practice, policy, or rule rather than the pre-emption of an entire "cause of action."

In sum, respondent is without authority to prevent the railroad from exercising its rights under a collective bargaining agreement by issuance of a uniform order to cover all plaintiffs in all FELA cases in the circuit court of the City of St. Louis. Plaintiffs' claims, collectively and individually, for a protective order to prevent the railroad from requiring them to provide medical documentation or to attend an FCE are pre-empted by the RLA. The RLA arbitral board designed to hear the minor disputes of these parties possesses exclusive jurisdiction of this dispute. In so holding, this Court does not purport to rule on the propriety of the railroad's actions in any FELA cases. The issue before this Court is not whether the railroad's action gives the railroad an unfair advantage or whether the protective order should be granted. The issue is whether the mandatory arbitration provisions of the RLA control.

Plaintiffs are not without remedies. Their assertions that the railroad's actions are intended to interfere with plaintiffs' ability to proceed with their FELA actions and that the railroad's true motive is to cut off FELA liability for future wages could prevail in arbitration. Moreover, the railroad's exercise of any rights it has to hold an investigative or disciplinary hearing should not deny plaintiffs the right to maintain their FELA actions. Additionally, in the FELA case itself, the trial court remains authorized to employ its conventional trial court powers to control the parties and the litigation in the underlying FELA action.

For the foregoing reasons, respondent is not authorized to issue the protective orders. The RLA adjustment board established pursuant to the RLA possesses exclusive jurisdiction of these minor disputes. The preliminary order in prohibition is made absolute.

BENTON, C.J., and PRICE, LIMBAUGH, ROBERTSON and HOLSTEIN, JJ., concur.

WHITE, J., concurs in separate opinion filed.

PRICE, J., concurs in opinion of WHITE, J.

WHITE, Judge, concurring.

I concur fully in the principal opinion, but write separately to express my understanding of the limited scope of the Court's ruling. As the principal opinion holds, the blanket protective order issued by respondent, absent any showing of an attempt to abuse the discovery process in the particular cases that are the subject of this dispute, effectively destroys relators' ability to enforce their rights under the collective bargaining agreements. It was an abuse of discretion for the trial court to enter such a sweeping protective order.

I do not, however, understand the principal opinion to tie the hands of the trial court "in the event of a finding of bad faith in an individual plaintiff's case."[1] In that situation, the "conventional trial court powers to control the parties and the litigation"[2] include the power to fashion an appropriate protective remedy, including a protective order, when it is necessary for the protection of individual plaintiffs.

Recognizing the limited sweep of its holding, I concur in the principal opinion.