268 P.3d 400

**BNSF RAILWAY COMPANY,**
a Delaware corporation,
Petitioner,

v.

**The Honorable John A. BUTTRICK, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Roy Crain, a married man, Real Party in Interest.**

**No. 1 CA–SA 11–0227.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 29, 2011.

Fennemore Craig, P.C. By Timothy J. Berg, Theresa Dwyer–Federhar, William L. Thorpe, Bradley D. Shwer, Phoenix, Attorneys for Petitioner.

Osborn Maledon, P.A. By Mark I. Harrison, Thomas L. Hudson, Jason J. Romero, Brandon A. Hale, Phoenix, Attorneys for Real Party in Interest.

## OPINION

SWANN, Judge.

¶ 1 This case involves two proceedings in two forums. The first is an action pending in superior court in which Roy Crain is suing his employer, BNSF Railway Company, under the Federal Employers' Liability Act ("FELA") to recover damages for personal injuries sustained on the job (the "FELA action").

¶ 2 During the FELA litigation, BNSF asked Crain to submit medical notices as required under the Collective Bargaining Agreement ("CBA") between Crain's union and BNSF. In response, Crain sought a protective order under Ariz. R. Civ. P. 26(c), and the trial court granted it. The court's order prohibited BNSF from requesting the notices but noted that BNSF might be able to discipline Crain if he did not attend a hearing in the second proceeding—one that BNSF had scheduled pursuant to the CBA and the Railway Labor Act. That hearing (the "CBA proceeding") addressed the possible employment consequences of his nonproduction.

¶ 3 BNSF brought this special action, asking us to determine whether the trial court had exceeded its jurisdiction. Because the CBA proceeding is a parallel proceeding that falls outside the jurisdiction of the state court, we conclude that BNSF's requests for Crain's medical notices under the CBA were not subject to state court control.

### FACTS AND PROCEDURAL HISTORY

¶ 4 Roy Crain alleges that in May 2005, while working for BNSF, he was inspecting locomotives in an area that had no level ground and no artificial lighting. He lost his footing, slid down an embankment, and injured his lower back and his shoulder.

¶ 5 In 2008, Crain sued BNSF in state court under FELA for failing to provide him with a safe workplace. As part of his suit, Crain disclosed to BNSF all necessary documents required by the Arizona Rules of Civil Procedure, including all pertinent medical records as they became available.

¶ 6 In September 2010, Crain's doctors told him that, because of the symptoms stemming from his 2005 injury, he was no longer able to work on his assigned duties for BNSF. In August 2011, the Railroad Retirement Board declared that Crain's back injuries had rendered him occupationally disabled as of September 16, 2010.[1]

¶ 7 Also in September 2010, Crain stopped providing BNSF with the medical notices that he had been providing since May 2005. These notices were required by the CBA between Crain's union and BNSF. According to BNSF, the purpose of these notices is to "provide BNSF with a timely and efficient method of verifying, on a regular basis, that employees receive treatment and that continued leave is medically justified." The notices also allow BNSF: (1) to confirm that an employee's absence from work is medically related to an on-the-job incident; (2) to make informed decisions about facilitating an employee's return to work; and (3) to estimate personnel needs.

¶ 8 On April 1, 2011, BNSF wrote to Crain and asked him to submit his usual CBA-required medical notice. When Crain did not provide it, BNSF wrote again on April 21. On April 26, Crain's counsel wrote to counsel for BNSF and requested that BNSF stop seeking medical information from him outside of discovery, arguing that it constituted "improper *ex parte* contact."

¶ 9 On June 1, BNSF sent Crain a letter notifying him that a hearing was scheduled for June 28. The hearing would investigate Crain's alleged misconduct in failing to comply with BNSF's requests for medical information. On June 8, BNSF's counsel wrote to Crain's counsel, stating that "[s]o long as [Crain] remains a BNSF employee," there was "no legitimate basis for relieving [Crain] of his obligations to communicate with BNSF...." At the request of Crain's union representative, BNSF postponed the investigatory hearing until August 2.

¶ 10 On July 28, Crain filed an emergency motion for a protective order in the FELA action under Ariz. R. Civ. P. 26(c). He asked

1. The extent of Crain's disability is unclear from the record. BNSF has suggested to Crain that he might be eligible to perform duties other than those to which he had been assigned.

that the order prohibit BNSF "from (1) requesting information directly from [Crain] pertaining to his suit against BNSF outside the confines of Arizona's discovery rules." He also asked that it "enjoin[ ] BNSF from disciplining [Crain] for his failure to respond to its improper inquiries or requiring him to attend an investigation in connection therewith." BNSF again agreed to postpone the hearing until August 16 so that the parties could fully brief the issue.

¶ 11 After reviewing pleadings and hearing oral argument, the court granted Crain's motion on August 16. The court noted that Crain's "dual status as both an employee and litigation adversary of BNSF" introduced tension "between an employer's right to communicate directly with its employee regarding work related issues and the Arizona Rules of Civil Procedure mechanisms for orderly discovery during litigation." To resolve that tension, the court relied on two analogous California cases, which the court said had the effect of "protecting the employee." The court stated in a footnote, however, that "disciplinary action may be leveled against [Crain], a current employee of BNSF, should he not participate in the hearing."

¶ 12 On September 12, BNSF sent a letter to Crain informing him that he had been discharged as a result of the hearing held in August. On September 13, it sent Crain another letter stating that his discharge "would be held in abeyance" until this special action is decided.

### JURISDICTION AND STANDARD OF REVIEW

¶ 13 BNSF filed its petition for this special action on September 14. A "special action shall not be available where there is an equally plain, speedy, and adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a). BNSF argues that, despite the court's order, the CBA between Crain's union and BNSF entitles it to receive medical notices from Crain even during the current litigation. Therefore, declining jurisdiction over this special action and making BNSF wait until after the FELA action concludes would not

be "an equally ... speedy ... remedy." We agree.

¶ 14 Further, because "the decision to accept jurisdiction is largely discretionary with the court," *State ex rel. Pennartz v. Olcavage,* 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001), BNSF insists that special action jurisdiction is appropriate when a trial court commits clear error on discovery issues. Because discovery matters can be "properly entertained in special actions," *Ingalls v. Superior Court,* 117 Ariz. 448, 449, 573 P.2d 522, 523 (App.1978), we accept jurisdiction to decide whether the trial court's Rule 26(c) protective order was issued "without or in excess of jurisdiction or legal authority." Ariz. R.P. Spec. Act. 3(b).

### DISCUSSION

¶ 15 To maintain the integrity of the discovery process and to ensure that no witness is harassed, the Arizona Rules of Civil Procedure grant trial courts broad discretion to issue protective orders. *See City of Casa Grande v. Ariz. Water Co.,* 199 Ariz. 547, 555, ¶ 26, 20 P.3d 590, 598 (App.2001). The court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Ariz. R. Civ. P. 26(c). Generally, we treat the court's decisions regarding discovery issues with deference and will not disturb its rulings absent an abuse of the court's discretion. *Casa Grande,* 199 Ariz. at 555, ¶ 26, 20 P.3d at 598.

¶ 16 Encouraging us to apply that deferential standard to this case, Crain emphasizes trial courts' " 'inherent power and discretion to adopt special, individualized procedures designed to promote the ends of justice in each case that comes before them.' " *State v. Tackman,* 183 Ariz. 236, 238–39, 902 P.2d 1340, 1342–43 (App.1994) (quoting *Hedlund v. Sheldon,* 173 Ariz. 143, 146, 840 P.2d 1008, 1011 (1992)). He argues that the trial court had "ample authority to issue the protective order"—even without Rule 26(c)—under A.R.S. § 12–123(B), which declares that "[t]he court, and the judges thereof, shall have all powers and may issue all writs necessary to the complete exercise of its jurisdiction."

¶ 17 The question, then, is whether the requests for information that BNSF made under the CBA lie outside the superior court's jurisdiction. The Arizona Supreme Court, distinguishing "jurisdiction" from "power," explained that "[j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs." *Rural/Metro Corp. v. Ariz. Corp. Comm'n,* 129 Ariz. 116, 118, 629 P.2d 83, 85 (1981) (quoting *Del. River Port Auth. v. Pa. Pub. Util. Comm'n,* 408 Pa. 169, 182 A.2d 682 (1962)); *see also, State v. Maldonado,* 223 Ariz. 309, 311, ¶ 14, 223 P.3d 653, 655 (2010).

¶ 18 Here, the trial court clearly exercised its power to regulate the process of discovery when it ordered BNSF to stop seeking the CBA-required medical notices from Crain. Absent the existence of a parallel proceeding under federal law, this order would have been a permissible exercise of the court's power to control discovery upon an appropriate finding that the order was required "to protect a party … from annoyance, embarrassment, oppression, or undue burden or expense." Ariz. R. Civ. P. 26(c)(1).

¶ 19 The CBA between BNSF and Crain's union defines the obligations that BNSF and Crain have to one another as employer and employee. If disputes between Crain and BNSF arise over those CBA-imposed obligations, the CBA provides a procedure for resolving them, e.g., an investigatory hearing. Those proceedings, which are conducted under the auspices of the Railway Labor Act, 45 U.S.C. §§ 151–164, fall outside the scope of actions that the superior court is granted jurisdiction to entertain.

¶ 20 One of the California cases upon which the trial court relied, *Pratt v. Union Pacific R.R. Co.,* 168 Cal.App.4th 165, 85 Cal.Rptr.3d 321 (2008), dealt with a similar situation. A railroad employee obtained a protective order that exempted him from submitting work-related medical information, and the railroad challenged the order on appeal. *Id.* at 169–70, 85 Cal.Rptr.3d 321. The Court of Appeal affirmed. *Id.* at 171, 85 Cal.Rptr.3d 321. The *Pratt* court premised its reasoning on the belief that the railroad's request for documents was "merely a pretext to gain an unfair advantage in the underlying action." *Id.* at 173, 85 Cal.Rptr.3d 321. Here, however, BNSF has alleged that its request for Crain's medical notices was not only required by the CBA but that it served an independent purpose: to allow it to find Crain another position within BNSF for which he was not "occupationally disabled," which was the Railroad Retirement Board's specific finding. Indeed, in a letter BNSF sent to Crain on April 1, 2011, the railroad told him that "[i]t is possible that we can accommodate your work restrictions." In these circumstances, we cannot say as a matter of law that the request for medical information was "merely a pretext."

¶ 21 Apart from the factual differences, we find *Pratt* legally unpersuasive. The case did not address the limits of the state court's authority to interfere with the conduct of an independent proceeding—it simply assumed that any means of gaining information relevant to a pending state court proceeding fell within the jurisdiction of that court. Moreover, *Pratt* framed the legal issue as whether the Railway Labor Act *preempted* the state courts from granting protective relief during discovery under California's procedural rules. Concluding that federal preemption did not apply, the *Pratt* court reasoned that the trial court had acted within its authority.

¶ 22 As to the other California case the trial court cited, *Bernal v. Southern Pacific Transportation Co.,* 196 F.R.D. 371 (E.D.Cal. 2000), the trial court apparently found its rationale less than compelling. The railroad in that case was seeking similar CBA-required medical notices from an employee who had brought a FELA action. *Id.* at 372. The employee argued that the requests for the medical notices violated California's rules of professional conduct governing *ex parte* communications. *Id.* After analyzing the relevant CBA, the Railway Labor Act, and the *ex parte* rules in California, the *Bernal* court concluded that the railroad could neither compel the employee to attend a CBA-governed hearing nor take any disciplinary action against the employee for his failure to attend. *Id.* at 374.

¶ 23 The trial court in this case quite properly stopped short of following *Bernal*'s logic to its conclusion. The footnote in the minute entry makes clear that the court did not intend to interfere with the substance of the CBA proceeding—BNSF remained free to level disciplinary action against Crain for not participating in the hearing. That portion of the court's order is sound: it insulates the CBA-governed process under which BNSF interacts with its employees from state court interference.

¶ 24 In *State ex rel. Union Pacific Railroad Co. v. Dierker,* 961 S.W.2d 816 (Mo. 1998), the Missouri Supreme Court considered two cases similar to *Pratt* and this case. The court reached a result opposite to *Pratt,* holding that a broad protective order against compelled submission of medical records exceeded the state trial court's jurisdiction. *Id.* at 824 ("It was an abuse of discretion for the trial court to enter such a sweeping protective order."). *Dierker* also rested its analysis on the preemptive effect of the Railway Labor Act, concluding (unlike *Pratt*) that the dispute was a "minor dispute" that was preempted.[2] *Id.*

¶ 25 We take a different approach than that of the Missouri and California courts.

¶ 26 Preemption in this context relates to the effect of federal law on the ability of a state court to consider a substantive controversy under state law. *See, e.g., Dillon v. Zeneca Corp.,* 202 Ariz. 167, 170, ¶ 6, 42 P.3d 598, 601 (App.2002) (citing U.S. Const. art. VI, cl. 2; *Defenders of Wildlife v. Hull,* 199 Ariz. 411, 426, ¶ 57, 18 P.3d 722, 737 (App. 2001)) ("Under the doctrine of preemption, federal laws supersede conflicting state laws."). In this case, there is no suggestion that the state court should have jurisdiction to decide the federal labor dispute between the parties; the case before the superior court concerns only a personal injury claim. The pertinent question, therefore, is not what the court can and cannot do under the Railway Labor Act, but whether the trial court's jurisdiction extends to the conduct of an independent proceeding with a dignity of its own.

¶ 27 For that reason, we see no need to delve into the distinction drawn in federal preemption case law between "major" and "minor" disputes under the Railway Labor Act. *See, e.g., Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252–53, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). The CBA provides a process for addressing the type of dispute that BNSF and Crain are involved in—i.e., whether Crain's refusal to supply the CBA-required medical notices constituted employee misconduct.[3] Whether a state court *could* resolve such a dispute is unimportant; what is important is that BNSF has lawfully commenced such a proceeding outside the state court. Because that proceeding is independent, the trial court lacked authority to inject itself into its management, just as a hearing officer acting under the authority of the Railway Labor Act would lack authority to issue orders limiting state court discovery. Indeed, if Crain had simultaneously sought relief on similar facts in a federal district court and an Arizona superior court, each forum would lack the authority to interfere with the other's procedural orders, independent of any preemption that might exist.

¶ 28 We acknowledge the tension between the CBA proceeding and the state court litigation. It is understandable that Crain is reluctant to divulge information to BNSF while the state court litigation is pending. But the CBA grants BNSF certain rights (e.g., to obtain work-related information from Crain and to a hold a hearing if Crain does not provide it), and those rights remain valid

---

2. *Pratt* distinguished *Dierker* on the ground that Missouri law does not afford trial courts the broad power over discovery that California law contemplates. *Pratt,* 168 Cal.App.4th at 177, 85 Cal.Rptr.3d 321. Though we are not convinced that there is a meaningful distinction between Missouri and California law on this point, we need not assign Arizona a place along that continuum to resolve this case.

3. We recognize that the hearing was scheduled only after Crain's refusal to submit the medical notices. The fact that the hearing was scheduled to enforce (rather than monitor) the obligation does not diminish the significance of Crain's ongoing obligations to his employer under federal labor law. The evaluation of his status by BNSF constitutes a proceeding under the CBA that carries the imprimatur of federal law.

even during discovery. Although Arizona courts have broad powers, both express and inherent, to control the course of their own proceedings, those powers do not create jurisdiction to control independent proceedings conducted under the authority of a separate sovereign.

## CONCLUSION

¶ 29 The trial court exceeded its jurisdiction when it granted Crain's motion for a Rule 26(c) protective order denying BNSF access to the CBA-required medical notices. We therefore vacate the court's order so that the case may proceed in a manner consistent with this decision.

CONCURRING: MARGARET H. DOWNIE, Presiding Judge and DONN KESSLER, Judge.