**Reginald VICARY, Plaintiff,**

v.

**CONSOLIDATED RAIL CORP., Defendant.**

No. 3:96CV7108.

United States District Court, N.D. Ohio, Western Division.

Oct. 7, 1996.

E.J. Leizerman, Law Offices of E.J. Leizerman & Associates, Toledo, OH, for plaintiff Reginald Vicary.

John A. Borell, Doyle, Lewis & Warner, Toledo, OH, for defendant Consolidated Rail Corporation.

Order

CARR, District Judge.

This is an FELA and Boiler Inspection Act case in which the plaintiff has filed a motion for injunctive relief seeking to bar defendant Conrail from compelling answers to certain questionnaires and forcing plaintiff to submit to medical examinations and evaluations outside the restrictions of Fed.R.Civ.P. 26 et seq. (Doc. 8). Conrail opposes the motion. (Doc. 11).

For the reasons that follow, plaintiff's motion, which I deem to be a motion for a protective order, shall be granted.

Plaintiff claims to have been injured on January 20, 1996, while operating a locomotive. On June 26, 1996, Conrail sent a letter to the plaintiff instructing him to report on July 19, 1996, to the Center for Rehabilitation of the St. Charles Hospital in Oregon, Ohio. Enclosed with the letter were: a map, an "Illness Effects Questionnaire," a "Pain Mgmt [sic] Intake/History Questionnaire," "A Message to Your Family & Friends," a "Daily Activity Diary," and a "When Pain Won't Stop Brochure." Copies of the "Intake/History Questionnaire" and "Illness Effects Questionnaire" are attached to this Order.

Plaintiff objects to Conrail's demand for information and the examination which Conrail wants conducted at St. Charles Hospital. According to the plaintiff, "it is patently obvious that the railroad is really attempting to engage in extra-judicial discovery," without any effort thus far by its attorneys to "engage in discovery under the Rules." (Doc. 8, at 2). Plaintiff also objects to giving Conrail the opportunity, if the materials are completed and the exami-

nation is conducted, "to obtain uncounseled statements from the plaintiff." (*Id.*)

As part of his reply to Conrail's opposition to the motion for injunctive relief, the plaintiff submits affidavits from three other plaintiffs in FELA cases pending in this court.[1] Two of the affiants, Michael Cremean (Doc. 19) and David Hernandez (Doc. 20), state that Conrail instructed them to provide certain medical records, and when they failed to do so, they were fired. The third affiant, Fred Hill (Doc. 18), states that disciplinary proceedings are pending as a result of his failure to appear for an examination mandated by Conrail.

According to Conrail, it "seeks a description of the pain [plaintiff] has experienced following the accident . . . , the medical treatment sought by him following said accident, the effects (if any) of his pain upon his work as a Conrail employee." In Conrail's view, "[t]he questionnaire and other documents submitted to plaintiff appear to be designed to equip Conrail with information regarding plaintiff's condition following the accident and its effect upon his ability to perform his duties as a Conrail employee" so that Conrail can "assign plaintiff [to] the proper employment duties given his condition following the January 20, 1996 workplace accident." (Doc. 11, at 2, 3).

I disagree with Conrail's view of the materials which it has instructed the plaintiff to provide and the procedures to which it wants him to submit. First, I note that the record presently does not indicate that the plaintiff has sought to return to work. Absent such showing, there would appear to be no basis whatsoever for Conrail to demand this so-called return to work examination.

More importantly, Conrail seeks far more than a conventional physical capacities examination and evaluation. The Pain Clinic's "Message to Family and Friends of Our Patients" indicates that the plaintiff will participate in a program designed to provide treatment, rather than to evaluate his present condition. According to the opening sentences of that document, "[y]our family member is about to begin [a] very intensive program to help them [sic] manage the chronic pain."

The treatment-oriented nature of the "program" is underscored by the deposition of Dr. Susan Crowley, a psychiatrist to whom the plaintiff also had been referred as part of the evaluation process at issue in this dispute. According to Dr. Crowley, she received a letter from Health Risk Management (HRM), a provider of "disability management services" to employees at the request of employers. (Doc. 16, Exh. 3). In its letter HRM informed Dr. Crowley that the plaintiff would "like to 'continue' treating with" her (though she had never treated the plaintiff) and an appointment had been made for him to see her on July 19, 1996. (Doc. 16, at 5, 6).

When she met with the plaintiff, Dr. Crowley learned that he was already treating with another physician and was happy with that doctor's treatment. In view of that circumstance, Dr. Crowley testified, she agreed with the plaintiff that it was not necessary for someone in her office to see him. (*Id.* at 6, 7).

During her deposition Dr. Crowley reviewed the questionnaires that Conrail had instructed the plaintiff to answer for the Pain Management Clinic at St. Charles Hospital. In her view, the materials related to a program of treatment, which can only be prescribed by a treating physician. (*Id.* at 8–10). Dr. Crowley also testified that a related request from HRM for her to prescribe an EMG for the plaintiff (*Id.* Exh. 3) could only be fulfilled by a treating physician, not an evaluating doctor such as herself. (*Id.* at 21).

Dr. Crowley also testified about a letter sent on April 19, 1996, by Conrail to the plaintiff, in which the plaintiff had been instructed "to attend a medical evaluation that has been scheduled for you by the Conrail Medical Department" on April 24, 1996, at Dr. Crowley's office. In its letter arranging

---

1. *Hernandez v. Consolidated Rail Corp.*, No. 3:95CV7352 (Hon. David A. Katz, United States District Judge); *Cremean v. Consolidated Rail Corp.*, No. 3:96CV7107 (Hon. John W. Potter, Senior United States District Judge); *Hill v. Consolidated Rail Corp.*, No. 3:96CV7122 (Hon. Vernelis K. Armstrong, United States Magistrate Judge).

that earlier visit, Conrail had also instructed the plaintiff "to bring films of all x-rays and MRI/CT scans, medical reports and tests." (*Id.* Exh. 4).[2]

The last line of that letter told the plaintiff, "This is a required medical evaluation by Conrail and it is your responsibility to keep this appointment. Failure to comply with these instructions may result in disciplinary action."[3]

Dr. Crowley was asked, with reference to the instruction to the plaintiff from Conrail that he bring "films of all x-rays and MRI/CT scans, medical reports and tests," about "how many people have ever done that" in her experience. She stated that she did not "recall anyone from Conrail ever doing that." (*Id.* at 22). It would be rare, in her view, for a patient to be able to assemble those records, particularly if there had been "multiple consultants and ... tests at different sites [because] the records are sort of scattered here, there and everywhere." (*Id.*).[4]

In addition to commanding the plaintiff to participate in a program that is, at least in part, treatment-oriented, rather than simply diagnostic, the materials ask him to provide extensive information about his personal and medical condition and circumstances. The relationship between many of these questions and his ability to resume working on the railroad is difficult to discern.

In response to plaintiff's opposition to the command that he complete these materials and attend the pain clinic, Conrail represents that it would abide by an order from this Court that excluded information thereby gained from the trial. Otherwise, according to Conrail, I am powerless to respond to its attempts to gain highly personal information from the plaintiff and to compel him to submit to treatment—including invasive procedures, such as an EMG—under the threat of permanent loss of employment with the railroad.

In Conrail's view, I have no power to control its extra-judicial conduct because the Norris–LaGuardia Act, 29 U.S.C. Sec. 101 deprives me of the authority to issue the injunction that plaintiff seeks in his motion. That statute states, in pertinent part, that a court has no jurisdiction to issue an injunction in "a case involving or growing out of a labor dispute." Section 113(c) of the statute defines a "labor dispute," *inter alia,* as "any controversy concerning terms or conditions of employment."

I agree with Conrail that the Act may well prevent me from interfering directly with disciplinary proceedings brought by the railroad against an employee. *See, e.g., Heller v. Consolidated Rail Corp.,* 1995 WL 476244 (E.D.Pa.). But, as the court also noted in *Heller,* "I see no such handcuffing of my stewardship of the plaintiffs' FELA cases." *Id.* at 3. That stewardship includes supervision over the course of pretrial discovery, which, in turn, means making sure that all parties comply with the rules that regulate such discovery.

Like the court in *Smith v. Union Pacific Railroad Co.,* 878 F.Supp. 171, 172 (D.Colo. 1995), I find the railroad's arguments "facile and unpersuasive." As in *Smith,* the plaintiff's motion in this case relates to the defendant's effort to exceed the limits of the Rules of Civil Procedure. Conrail errs when it asserts that this dispute involves a "contro-

---

**2.** April 19th, the date of the letter, was a Friday. If HRM mailed the letter that day, it would have been received, at the earliest, on Saturday, giving the plaintiff at most three days (Monday, Tuesday, and Wednesday) to gather his medical records for the appointment at Dr. Crowley's office at 8:20 a.m. on Thursday, April 24, 1996.

**3.** In light of the affidavits noted above, this is hardly an idle threat.

**4.** I take judicial notice of the frequency with which counsel seek extensions of discovery dead-

lines and, on occasion, continuances of trial dates because doctors and hospitals have ignored their requests for medical records. If counsel, who ultimately can call on this Court's subpoena and contempt powers to enforce such requests, have month-long problems getting medical records, it is not surprising that Dr. Crowley would anticipate that an individual patient would encounter problems when he sought to comply, under threat of disciplinary action by Conrail, with its mandate that he obtain all pertinent records within the space of three working days.

versy concerning terms or conditions of employment" under the Norris–LaGuardia Act.

Plaintiff's motion challenges, rather, Conrail's effort to obtain information in anticipation of trial—even though Conrail, post-hoc, states that it will not use such information at trial. Discovery under the rules, as the defendant and its lawyers are well aware, is not limited solely to evidence and information to be offered at trial. Indeed, much of the information developed during pretrial discovery is not admissible. Much of what is thereby learned is, nonetheless, of great use to counsel and client as they prepare for trial.

Because this is a discovery dispute, and not a dispute about the terms and conditions of plaintiff's future employment with the railroad, plaintiff's motion, though captioned as a motion for injunctive relief, shall be treated as a motion for a protective order under Fed.R.Civ.P. 26(c). As such, it shall be granted.

The defendant has undertaken, with no showing of need or legal justification, to bypass plaintiff's counsel and obtain information directly from the plaintiff about his personal life, medical history and condition, and the effects of the accident leading to this lawsuit. Some of that information may be discoverable under the Rules of Civil Procedure; but the rules do not entitle Conrail to all the information called for by the questionnaires and other procedures. In any event, the proper scope of discovery is for me to decide when and if disputes arise in the normal course of pretrial proceedings.

I agree with the plaintiff, moreover, that Conrail's motives in employing the procedures that it has followed in this and other cases are highly suspect. Conrail imposes unreasonable, unjustified, and improper demands, and in doing so, it circumvents the right to representation by counsel and disregards the doctor-patient relationship. Conrail seeks, moreover, to gain the information through treatment-oriented procedures and physically invasive techniques, rather than by means of purely diagnostic measures.

In addition, Conrail threatens to implement (and in at least three cases currently pending in Court, has implemented) drastic disciplinary sanctions, including termination, for noncompliance with its demands for medical and personal information. Having already fired two of plaintiff's fellow employee/plaintiffs for not acquiescing in those demands, Conrail probably will try to argue in those cases that the plaintiffs cannot claim economic losses in light of the termination of their employment with Conrail. *See Smith, supra.* Whether intended or not, the effect of Conrail's actions in those cases is likely to enhance its success in whole or part at trial.[5]

If the plaintiff seeks to return to work, Conrail is entitled to make certain that he can do so safely. If the plaintiff fails to abide by reasonable requests for information and cooperation, Conrail can implement appropriate disciplinary procedures. But those efforts, which should be limited in scope to the specific circumstances, cannot ignore the requirements of the civil rules and other legal constraints that check Conrail's power to dominate the plaintiff while he is a litigant in this Court.[6]

Conrail's effort to circumvent the rules threatens the integrity of the judicial process and the doctor-patient relationship and endangers the right to counsel and a fair trial. As sanction for its misconduct in this instance, Conrail shall compensate plaintiff for the attorneys' fees and costs, including deposition costs, associated with the instant motion.

It is, therefore,

ORDERED THAT plaintiff's motion for injunctive relief (Doc. 8), being deemed a motion for a protective order, be, and the same hereby is granted; the plaintiff is relieved from any obligation of complying with the instructions of the defendant relating to medical and other information and medical

---

**5.** Judges Katz and Potter and Magistrate Judge Armstrong will be provided with a copy of this opinion for their information, consideration, and such further action, if any, as each may deem appropriate.

**6.** To avoid future disputes, I anticipate discussing Conrail's desire, if any, for a "return to work" evaluation at the initial case management conference in FELA cases hereafter assigned to my docket.

treatment as given to him by the defendant in its letter of June 26, 1996, and related materials; and it is

FURTHER ORDERED THAT defendant shall pay the attorney's fees and costs in- curred by plaintiff in obtaining the relief provided herein.

So ordered.

## ATTACHMENT

QUESTIONNA

Name:_____ _____

33. )w would you describe the quality of your sleep?
 A. Usually restless B. Frequently restless
 C. Frequently peaceful D. Usually peaceful

34. How many times per week are you engaged in an aerobic activity? e.g. walking, biking, swimming for at least 30 minutes duration?
 a. none b. 1-2 times c. 2-3 times d. 3-4 times 3. 5+ time:

35. What kinds of recreational/leisure activities do you like to do for ft or relaxation in your free time?_____
_____
_____

| SECTION 7: EMOTIONAL EFFECTS | Not at All | | Occas. | | | Almost All The Time | |
|---|---|---|---|---|---|---|---|
| 36. Do you currently feel suicidal? | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 37. I feel as though I am under a great deal of stress. | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 38. Prior to onset of present symptoms, I was under a great deal of stress. | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 39. I feel that my family & friends are supportive. | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 40. People often know I am in pain without my having to tell them. | 1 | 2 | 3 | 4 | 5 | 6 | 7 |

41. Other members of my family and significant persons in my life have experienced a disabling illness or pain problem. Yes No
 If yes, please explain:_____

42. Situations or changes you have anticipated or encountered in this past year include: (Please circle all that apply.)
 A. Death of a family member or close friend
 B. Marital problems
 C. Legal problems or jail terms
 D. Change in important relationships
 E. Change or difficulty in job
 F. Illness in family
 G. Sexual problems
 H. Pregnancy or new family member
 I. Financial problems
 J. Began or ended school
 K. Change in living situation
 L. Physical or emotional abuse
 M. Family problems
 N. Pain
 O. Other_____

WORK REHAB QUESTIONNAIRE

Name:_____

## SECTION 8: VOCATIONAL EFFECTS

43. Employment Status (Circle one or write in hrs. per week where applicable.)
 A. Employed but on medical leave and/or temporary disability
 Reason:_____
 B. Unemployed because of pain
 C. Unemployed due to lack of work
 D. Employed but currently laid off
 E. Employed (____hours per week)
 F. Attending school or job training (____hours per week)
 G. Homemaker/housewife
 H. Retired because of pain
 I. Retired for other reasons
 J. Not interested in employment
 K. Permanent disability
 L. Other:_____

44. If you are currently working, indicate date of return to work.
 _____

45. Job Title:_____
 Wage per hour at time you last worked:_____
 Briefly describe your job._____
 _____
 _____

 Type of Work: A. Regular B. Light Duty

46. Are you in school, job training, and/or involved in volunteer work?
 Yes No If yes, does your physical problem interferes with school and/or volunteer work:
 not at all very much so
 1 2 3 4 5 6 7

47. How soon after your physical problem began did you attempt to return to work? Circle one.
 A. Immediately B. Within 2 to 3 weeks
 C. Within 1 to 2 months D. Within 3 to 4 months
 E. Within 5 to 6 months F. Within 7 months to one year
 G. Within two years H. Within 3 years
 I. Never attempted to return J. Not applicable
 K. I am currently working.

48. I am satisfied with my work life.
 strongly disagree strongly agree
 1 2 3 4 5 6 7

49. I feel my employer has been accommodating (helpful) with regard to a... problems I have encountered due to my physical problem.
 strongly disagree strongly agree
 1 2 3 4 5 6 7

50. To what extent do the following factors pose an obstacle to your return to work?

| | no obstacle | | | | severe obstacle | |
|---|---|---|---|---|---|---|
| Fear of reinjury | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Income/financial | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Dislike of job | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| Family problems | 1 | 2 | 3 | 4 | 5 | 6 | 7 |

Name: _____ _____

51. Circle any of the following items that have prevented your return to work since your physical problem began.
 A. Pain
 B. Lack of employment within my field specialty
 C. Lack of employment in any field/specialty
 D. Jobs offered didn't provide a livable wage
 E. Limited skills
 F. Not interested in working
 G. Involved in rehabilitation program
 H. Involved in school or training program
 I. Pregnancy/child care demands
 J. Other disability
 K. Not applicable, returned to work at least once
 L. Other: Explain: _____

52. I feel that I have been discriminated against by employers because of my physical injury. Yes No

53. What is your current total What is your current total
 personal income? Check one. family income? Check one.
 $0 - $4,999 $0 - $4,999
 $5000 - $9,999 _____ $5,000 - $9,999 _____
 $10,000 - $14,999 _____ $10,000 - $14,999 _____
 $15,000 - $19,999 _____ $15,000 - $19,999 _____
 $20,000 - $24,999 _____ $20,000 - $24,999 _____
 $25,000 - $29,999 _____ $25,000 - $29,999 _____
 $30,000 - $39,999 _____ $30,000 - $39,999 _____
 $40,000 - $49,999 _____ $40,000 - $49,999 _____
 $50,000 - $59,999 _____ $50,000 - $59,999 _____
 $60,000 - $69,999 _____ $60,000 - $69,999 _____
 Above $70,000 _____ Above $70,000 _____

54. I consider my personal income now to be (circle one).
 A. Adequate B. Marginal C. Inadequate

55. Indicate what type of financial assistance, based on your physical problem, that you currently receive.
 A. Workers' Compensation Yes No
 B. Social Security disability Yes No
 C. Other disability payments Yes No
 D. General relief Yes No
 E. Other Yes No

56. Are you currently involved in a lawsuit or legal action as a result of your physical problem? Yes No

57. Do you have any medical/work restrictions from your doctor? Yes No
 If yes, please explain._____

WORK REHAB QUESTIONNAIRE

Name: _____

58. Please mark on the appropriate drawing (male or female) where you feel your pain.

INTAKEQU.PMC
7/8/93/cb

# ILLNESS EFFECTS QUESTIONNAIRE

Your name _____ Date _____

Your illness or disability _____ Score _____

**INSTRUCTIONS**

Your responses to this questionnaire help us understand how your illness or disability disrupts your life. Respond to each statement by circling one number under the description that best matches how you feel. The higher the number your circle, the more you think the illness or disability disrupts your life.

| | Disagree a lot or never | | Disagree a little or sometimes | | Agree a little or often | | Agree a lot or always | |
|---|---|---|---|---|---|---|---|---|
| 1. My illness/disability makes it difficult for me to sleep. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 2. My illness/disability causes problems between myself and my family or friends. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 3. My sex life is suffering. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 4. I experience pain or discomfort. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 5. I think a lot about my illness/disability. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 6. People don't take my illness/disability serious enough. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 7. I experience many different symptoms | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8. My appetite is poor because of my illness/disability. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 9. My illness/disability is the biggest difficulty in my life. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 10. I don't work as well at my job, in school or at my hobbies. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |

PLEASE CONTINUE.....

IEQ - page 2

| | Disagree a lot or never | | Disagree a little or sometimes | | Agree a little or often | | Agree a lot or always | |
|---|---|---|---|---|---|---|---|---|
| 11. My illness/disability threatens my life. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 12. My illness/disability requires me to frequently get treatment. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 13. I can't remember or think well because of this illness/disability. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 14. My illness/disability prevents me from enjoying myself. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 15. My illness/disability is difficult to control. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 16. Due to this illness/ disability, I rely more upon others to do things I used to do by myself. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 17. Due to this illness/disability, I'm less interested in doing things. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 18. I have become a burden to others. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 19. I'll never again be the person I was before becoming ill/disabled. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 20. All things considered, my illness/disability disrupts my lift. | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |

Copyright 1984, 1989 IEQ by Glen D. Greenberg, Ph.D., Rolf A Peterson, Ph.D., and Robert L. Heilbronner, Ph.D.
All rights reserved. revised 3/89

IEQ.QST/ss
6/8/95