**Javier PARTIDA, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY; Norco and Does 1 through 20, Defendants.**

**No. CV 04–1122 DT(MCX).**

United States District Court, C.D. California.

May 17, 2004.

Larry Lockshin, Sacramento, CA, for plaintiff.

Ernster Law Firm, John Ernster, Pasadena, CA, Michael L. Whitcomb, Robert N. Belt, Union Pacific Railroad Company Law Department, Roseville, CA, for defendant.

ORDER **GRANTING IN PART** AND **DE-NYING IN PART** PLAINTIFF JAVI-ER PARTIDA'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION, OR, ALTERNATIVELY, FOR PROTECTIVE ORDER

TEVRIZIAN, District Judge.

**I. Background**

**A. Factual Summary**

Plaintiff Javier Partida ("Plaintiff") brings this lawsuit against Defendant Union Pacific Railroad Company ("Union Pacific") for negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 et seq., and against Norco for negligence in products liability and strict products liability. Plaintiff now moves the Court for a temporary restraining order and/or preliminary injunction, or, alternatively, for a protective order prohibiting Union Pacific from engaging in any further ex parte communications with Plaintiff requiring him to submit medical progress reports and from taking disciplinary action against Plaintiff for failing to submit the requested reports. Plaintiff also requests sanctions against Union Pacific.

Plaintiff alleged the following facts in the Complaint:

On May 13, 2003, Plaintiff was employed as a track laborer and machine operator by Union Pacific in Watsonville, California and was operating a certain self propelled track machine. (*See* Complaint, ¶ 5.) On this same date and while Plaintiff was operating his machine, he was suddenly and without warning rear-ended by another self-propelled track machine, commonly known as a Norco Model "C" Spike Driver ("Norco Spike Driver"), which caused him severe neck, back and body injuries. (*See id.,* ¶¶ 5, 6, 7.)

The following facts are provided as background to this litigation and pertain to the issues raised by Plaintiff's Motion:

On February 19, 2004, Plaintiff filed suit against Union Pacific. On July 30, 2003, counsel for Plaintiff wrote to Richard Sweet, Claims Supervisor of Union Pacific, providing medical information requested at that time, and requesting that any questions be directed to counsel's office. (*See* Plaintiff's Appendix of Exhibits to Plaintiff's Motion for Preliminary Injunction / Protective Order, Exhibit 1.) Despite the letter, on January 15, 2004, Union Pacific wrote to Plaintiff, ex parte, ordering Plaintiff to attend a medical examination on February 2, 2004. (*See id.,* Exhibit 2.) On March 8, 2004, Deb Schafer, the Railroad's Director of Quality Management contacted Plaintiff and ordered him to attend a medical examination on March 22, 2004, or face discipline and possible termination for insubordination. (*See id.,* Exhibit 3.)

By letter dated March 17, 2004, Plaintiff's attorneys wrote to Union Pacific's attorneys to state that Plaintiff would not appear for examination unless Union Pacific agreed that this would be its one medical examination of Plaintiff or that the examination and medical records from the examination would not be used for any purpose in this litigation. (*See id.,* Exhibit 4.) Union Pacific refused Plaintiff's proposed conditions. (*See id.,* Exhibit 5.)

According to Plaintiff, Joe Romero, track supervisor for Union Pacific, contacted Plaintiff and requested that he submit to Level 2 discipline for failing to attend a medical examination, and on March 31, 2004, Union Pacific sent Plaintiff a Notice of Investigation and set a disciplinary hearing for failure to submit to the railroad's ex parte medical examination. (*See id.,* Exhibits 6 and 7.)

On April 7, 2004, counsel telephoned and wrote to Robert N. Belt, Esq. at Union Pacific to postpone the hearing to permit Plaintiff to file a regularly noticed motion for a temporary restraining order. (*See id.,* Exhibit 8.) Mr. Belt agreed to continue the disciplinary hearing for at least 30 days. (*See id.,* Exhibit 9.)

### B. Procedural Summary

On February 19, 2004, Plaintiff filed his Complaint.

On April 2, 2004, Union Pacific filed its Answer to Complaint.

On April 23, 2004, Plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction to Restrain Defendant from Conducting a Hearing to Discipline Plaintiff for Refusing to Provide Defendant Extra Judicial Discovery, to Restrain Defendant From Terminating Plaintiff, or, for a Protective Order; Rules of Professional Conduct 2–100, and 45 U.S.C. § 55 and for Sanctions, which is currently before this Court.

On May 3, 2004, Union Pacific filed its Opposition to Plaintiff's Motion for a Preliminary Injunction.

On May 10, 2004, Plaintiff filed his Reply Brief in Support of Motion for Preliminary Injunction/Protective Order.

### II. *Discussion*

#### A. Standard for Preliminary Injunction

■ To prevail on a motion for preliminary injunction, the moving party is required to show either a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted, or the existence of serious questions regarding the merits and that the balance of hardships tips sharply in its favor. *See Chalk v. U.S. District Court,* 840 F.2d 701, 704 (9th Cir. 1988); *California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir. 1985). These standards are not treated as two distinct tests, but rather as "the opposite ends of a single continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987) (internal quotation marks and citation omitted). A showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm. *See Apple Computer, Inc. v. Formula Int'l Inc.,* 725 F.2d 521, 525 (9th Cir.1984) (citing *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed,* 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984)).

■ A preliminary injunction is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment. *See Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir.1984). It is an equitable device for preserving rights pending final resolution of the dispute. *See id.* at 1423. "The district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Id.* The Court must balance the equities in the exercise of its discretion. *See Int'l Jensen, Inc. v. Metrosound, U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir.1993).

### III. *Analysis*

Plaintiff request that this Court enjoin Union Pacific, or issue a protective order prohibiting Union Pacific from engaging in ex parte communications with Plaintiff, demanding Plaintiff to provide extra judicial discovery by way of undergoing medical examinations with a company doctor arranged outside of the Federal Rules of Civil Procedure, and for disciplining him for failing to submit to these examinations. Union Pacific objects to this request because it contends it requires the examinations for all injured workers who are on medical leave of

absence, even if they have filed a FELA lawsuit, as in the case here, because the examinations help determine when and if an injured worker may return to duty, and if so, at what capacity. Apparently, Union Pacific also uses the information to make hiring decisions.

### A. This Court Does Not Lack Jurisdiction Over Issues Raised By Plaintiff's Motion Because Those Issues Are Not Preempted By The Railway Labor Act

Union Pacific's main objection to Plaintiff's Motion is that the Collective Bargaining Agreement ("CBA"), which defines the terms and conditions of Plaintiff's employment, gives Union Pacific the right to determine whether an injured employee is physically capable of returning to duty, even if the employee has filed a FELA lawsuit. Moreover, according to Union Pacific, the fact that the CBA provides this right places this dispute squarely within the Railway Labor Act's ("RLA") dispute-resolution mechanisms and out of this Court's jurisdiction.

■ All "minor disputes … must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer." *Monroe v. Missouri P.R.R. Co.*, 115 F.3d 514, 518 (7th Cir.1997). A plaintiff's claim is properly characterized as a "minor dispute" when the resolution of the plaintiff's claim requires interpretation of the CBA. *See Monroe*, 115 F.3d at 519. Here, Union Pacific contends that Plaintiff's Motion involves the classic "minor dispute" that the RLA

preempts because Plaintiff is allegedly not asserting rights that exist independently of the CBA.

■ In support of its preemption argument, Union Pacific cites a number of judicial and administrative opinions which are largely inapposite, non-binding and unpersuasive.[1] Out of these, the only appellate opinion which Union Pacific contends is on point is the decision of the Supreme Court of Missouri in *State ex rel. Union Pacific Railroad Co. v. Dierker*, 961 S.W.2d 816 (Mo.1998), *cert. denied sub nom. Harper v. Union Pacific Railroad Co.*, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 43 (1998).[2] In *Dierker*, Union Pacific requested medical documentation from two of its employees who had filed FELA lawsuits, advising them that they would be subjected to discipline if they failed to provide that information. *Dierker*, 961 S.W.2d at 817. One of the employees was also directed to attend a fitness for duty examination and functional capacity evaluation. *Id.* at 818. The Missouri Supreme Court overturned the lower court's protective order and held that "[b]ecause the dispute is one that must be resolved by interpreting the collective bargaining agreement (between the union and the railroad), it is a minor dispute that must be referred to an RLA adjustment board established pursuant to the collective bargaining agreement." *Id.* at 821.

In reaching a conclusion, the *Dierker* court overlooked the holdings of "federal district courts in other states … that support the contrary position," relying instead on a line of cases from Missouri, including a published opinion, *Boncouri v. Union Pacific R.R. Co.*, 981 F.Supp. 1271 (E.D.Mo.1997). *Id.* at 822.

---

1. For example, Union Pacific references a few administrative board decisions holding that employees were properly disciplined under the CBA for failing to supply information as to their physical or mental conditions. However, as Plaintiff points out, it is not the function of administrative boards reviewing the imposition of discipline on union members to resolve legal issues outside of the CBA, such as the conflict between an employee's rights under the FELA or the Rules of Procedure and an employer's right under the CBA to obtain medical information. Furthermore, the two non-published California cases Union Pacific cites to in support of their position are factually distinguishable, dealing with a much more limited issue of plaintiff filling out an "accident re-

port" or a "medical progress report" instead of submitting to a full physical examination, as in the case here. *See Purscell v. Southern Pacific Transp. Co.*, CIV S–99–2282 WBS JFM (E.D.Cal. September 20, 2000); *Maben v. Southern Pacific Transp. Co.*, CIV S–99–2238 DFL DAN (E.D.Cal. March 20, 2001).

2. This Court notes that "Union Pacific acknowledges that when these issues have arisen in other cases, some courts have rejected its arguments, even going so far as to impose sanctions." (Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction, p. 4:3–5.)

However, aside from the fact that the case is not-binding, *Boncouri* is factually distinguishable from the current situation here. *Boncouri* involved an employee requesting a protective order prohibiting Union Pacific "from internally investigating his *accident* and from initiating or conducting any disciplinary proceedings against him as a result of the accident." *Boncouri*, 981 F.Supp. at 1272 (emphasis added).

Arguably, allowing a railroad company to demand that a FELA plaintiff submit to a physical examination involves a much more direct and obvious interference with an employee's interests and rights than when the railroad company is allowed to proceed with conducting internal investigations of accidents occurring within their own company. In any event, these cases relied on by Union Pacific are definitely not more persuasive than the magnitude of other decisions from various federal courts, including our own United States District Court for the Eastern District of California, that support the contrary position. For example, in *Bernal v. Southern Pacific Transportation Co. and Union Pacific Railroad Co.*, 196 F.R.D. 371 (E.D.Cal.2000), Union Pacific engaged in ex parte communications with a FELA plaintiff in an attempt to obtain medical information extra-judicially. In prohibiting Union Pacific's conduct, the court held:

> Here, plaintiff possesses a right, like all federal litigants, to the protections of the Federal Rules of Civil Procedure governing discovery. The court need not look to the CBA to determine that [Union Pacific's] conduct contravenes those rules of discovery.

> [Union Pacific] has been advised by judges of this court that its practice of sending medical questionnaires on an ex parte basis to FELA plaintiffs during the course of litigation, and then threatening disciplinary action when the plaintiffs failed to respond, is at odds with the Federal Rules of Civil

Procedure and the California Rules of Professional Conduct.

*Bernal*, 196 F.R.D. at 373–74.[3]

The court reached the same conclusion in *Riensch v. Union Pacific Railroad Co.*, 12 F.Supp.2d 1136 (D.Colo.1998), stating:

> It is ... inconceivable that Congress afforded injured workers the right to seek recovery pursuant to the FELA in federal court, but denied to the same injured workers the ability to invoke the Federal Rules of Civil Procedure during the pendency of their FELA actions. Unquestionably, the Federal Rules of Civil Procedure govern this FELA action. The Federal Rules provide for discovery in the form of physical examinations under Rule 35 upon a showing of good cause. Thus, [Union Pacific's] order requiring [plaintiff] to attend physical examinations circumvents the established procedures for discovery set forth in the Federal Rules.

12 F.Supp.2d at 1139.

Moreover, this Court finds the United States Supreme Court decision in *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) instructive here. In *Buell*, a railroad employee sought damages for workplace injuries under the FELA. Since the alleged injury resulted from conduct that was subject to the CBA, the railroad argued that the employee's sole remedy was through RLA arbitration. The Court unanimously rejected this argument, emphasizing that the rights derived from the FELA were independent of the CBA:

> The fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring an FELA action for damages .... The FELA not only provides railroad workers with substantive protection against negligent conduct that is independent of the employer's obligations under its collective-bar-

---

3. The *Bernal* court cites to various other opinions where Union Pacific was warned that it should refrain from disciplining plaintiffs for failing to provide information in connection with ex parte fitness-for-duty examinations, and reminding Union Pacific that it should refrain from ex parte communications with plaintiff during the pendency of the litigation. *See Bernal*, 196 F.R.D. at 373, n. 4.

gaining agreement, but also affords injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the Adjustment Board. It is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion.

480 U.S. at 564–565, 107 S.Ct. 1410.

Based on the authority above, it is clear that Plaintiff is asserting rights that are independent of the CBA, and thus, should not be preempted by the RLA.

### B. Violation Of The Federal Rules Of Civil Procedure And The California Rules Of Professional Conduct

■ Plaintiff argues that Union Pacific's ex parte communications are prohibited by the California Rules of Professional Conduct. Under Rule 2–100, an attorney may not communicate directly or indirectly with an adverse party about the action if the attorney knows the party is represented by counsel. *See* Cal. R. Prof. Conduct § 2–100. Although Union Pacific has been told by Plaintiff's counsel in no uncertain terms that it may not continue to engage in such conduct, Union Pacific continues in its attempt to obtain extra judicial discovery from Plaintiff.

Union Pacific argues that although the Rules of Professional Conduct proscribe an attorney from contacting a party who the attorney knows is represented by counsel, the rule has no application in this case because Union Pacific's attorneys did not contact Plaintiff. Apparently, these ex parte communications and demands were not generated by Union Pacific's law department, but rather, its Operating Department. Further, Union Pacific argues that even if generated by their legal department, the communications are authorized by the CBA and

should therefore be allowed. *See* Cal. R. Prof. Conduct § 2–100(C)(3). This Court is not persuaded.

The distinction Union Pacific creates between their two departments appear disingenuous, considering the operating department is permitted to share the results of the examinations with its legal department, and thereby use it against Plaintiff in litigation. Prior history demonstrates that these tactics used by Union Pacific may be geared toward obtaining an advantage in litigation rather than meeting any non-litigation related company needs as suggested above. At the very least, it is obvious that the contacts in question are made with the knowledge and acquiescence of Union Pacific's law department and that any information gained thereby may be used as part of their litigation strategy.[4]

### C. A Protective Order Is Warranted

■ As further demonstrated by applicable case law and because this is a discovery dispute, a protective order is appropriate to prevent Union Pacific from holding a disciplinary hearing against a FELA plaintiff who refuses to submit to a physical examination in an extra-judicial context. *See Riensch,* 12 F.Supp.2d at 1137 (issuing a protective order prohibiting Union Pacific from requiring plaintiff to attend the fitness-for-duty physical examinations); *see also Smith v. Union Pacific Railroad Company,* 878 F.Supp., 171 (D.Colo.1995); *Vicary v. Consolidated Rail Corp.,* 942 F.Supp. 1146 (N.D.Ohio 1996). The decision to grant a protective order is vested in the district court's discretion. *In re Standard Metals Corp.,* 817 F.2d 625, 628 (10th Cir.1987).

In *Smith,* the FELA plaintiff sought a protective order to prevent Union Pacific from requiring her to attend a "back-to-work" physical or disciplining her for refusing to do so. *See Smith,* 878 F.Supp. at 172. In determining that the requested protective

---

**4.** "[Union Pacific's] contention that they seek only to exercise their rights under the CBA, for the legitimate business purpose of monitoring the disability status of current employees such as the plaintiff, is belied by its refusal to stipulate at oral argument that it will not seek to use any information acquired through the medical questionnaires in this litigation." *Bernal,* 196 F.R.D.

at 373, n. 3. If Union Pacific, for some reason, has an urgent need apart from this litigation for medical information regarding the Plaintiff's ability to work, it may conduct a physical examination of the Plaintiff and stipulate that the results of any such examination will not be used in the pending litigation. To this date, Union Pacific has refused.

order was proper, the district court summarily rejected Union Pacific's contention that the physical was permissible:

I find [Union Pacific's] argument facile and unpersuasive. Clearly the "back-to-work" physical at issue bears directly on the issues pending in this case. It is entirely possible [that plaintiff] could· say something against his interest during the examination that could be used against him in this action. Should [plaintiff] continue to refuse to attend the physical and be fired pursuant to the terms of the collective bargaining agreement (apparently without representation by counsel), [Union Pacific] could significantly reduce the nature and amount of damages for which it is liable and obtain an unfair advantage in this litigation.

To the extent the "back-to-work" physical and ensuing disciplinary proceedings bear on issues relevant to this FELA action and generate facts or medical opinions that could be used as evidence against Smith, it constitutes discovery within the meaning of Fed.R.Civ.P. 26(b)(1) and is subject to this court's authority .... I find justice requires entry of a protective order prohibiting [Union Pacific] from requiring [plaintiff] to attend the "back to work" physical at issue and from initiating any disciplinary proceedings against [plaintiff] based on his failure to so attend.

*Id.,* at 172–73.

Similarly in *Vicary,* when a FELA plaintiff brought a motion for injunctive relief to prevent his employer from forcing her to answer certain questionnaires and to submit to medical examinations and evaluations, the district court treated the matter as a discovery dispute and issued a protective order granting the plaintiff's request:

The defendant has undertaken, with no showing of need or legal justification, to bypass plaintiff's counsel and obtain information directly from the plaintiff about his personal life, medical history and condition, and the effects of the accident leading

to this lawsuit. Some of that information may be discoverable under the Rules of Civil Procedure; but the rules do not entitle [the employer] to all the information called for by the questionnaires and other procedures.

*Vicary,* 942 F.Supp. at 1150.

With the instant action being remarkably similar to the above referenced cases, this Court finds that a protective order is also warranted herein. Since it appears that Union Pacific is indirectly obtaining these medical examinations to assist them in resisting Plaintiff's claim, these actions constitute discovery subject to the Court's authority. Further, this Court finds that Union Pacific's efforts to circumvent the discovery rules interfere with Plaintiff's rights to counsel. Therefore, this Court grants the requested protective order prohibiting Union Pacific from unilaterally requiring Plaintiff as an FELA litigant to submit to extra judicial medical examinations at issue and from initiating any disciplinary proceedings against Plaintiff based on his failure to so attend unless Union Pacific stipulates in writing in advance that the results of any such examination will not be used in the pending FELA litigation.[5]

## D. Plaintiff Is Not Entitled To Sanctions

■ Plaintiff requests significant sanctions, arguing that the position taken by Union Pacific regarding this matter is without legal basis and has required Plaintiff to bring this Motion unnecessarily. Thus, Plaintiff requests an award of sanctions in the amount of $20,000 for attorney's fees and costs to deter Union Pacific from engaging in similar conduct in the future.

However, due to the conflicting legal authority regarding the RLA preemption issue and the permissibility of Union Pacific's requests for medical reports, it cannot be said that Union Pacific acted without any legal basis. Courts have declined to award sanctions when the effect of an award would be to

---

**5.** Because this is a discovery dispute, the Court in not inclined to grant a temporary restraining order and/or preliminary injunction, and need not decide whether Union Pacific's actions violated 45 U.S.C. § 55, but rather, as explained above, the Court hereby grants the requested protective order as Plaintiff's alternative and appropriate relief.

curb zealous but proper advocacy. *See Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1160 (9th Cir.1987). In addition, there is obviously a conflict between the FELA legislation and the collective bargaining agreement arising out of the RLA.

Accordingly, Plaintiff's request for sanctions overreaches and is therefore denied.

## IV. *Conclusion*

In light of the foregoing, this Court **grants in part** and **denied in part** Plaintiff's Motion for temporary restraining order and/or preliminary injunction to restrain Defendant from conducting a hearing to discipline Plaintiff for refusing to provide Defendants extra judicial discovery; to restrain defendant from terminating Plaintiff, or, alternatively, for a protective order.

Specifically, this Court **grants** Plaintiff's request for a protective order, as set forth herein, but **denies** Plaintiff's request for a temporary restraining order, preliminary injunction and sanctions.

IT IS SO ORDERED.