[No. C055656. Third Dist. Nov. 12, 2008.]

CARLYLE PRATT, Plaintiff and Respondent, v.
UNION PACIFIC RAILROAD COMPANY, Defendant and Appellant.

## COUNSEL

Randolph Cregger & Chalfant, Joseph P. Mascovich and Adrian L. Randolph for Defendant and Appellant.

Larry Lockshin and Diana Esquivel for Plaintiff and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This appeal is from a trial court order prohibiting defendant Union Pacific Railroad Company (Union Pacific) from compelling plaintiff Carlyle Pratt to attend a medical examination or conducting a disciplinary hearing to terminate Pratt's employment for refusing to provide it with medical evidence justifying his continued absence from work.

In the underlying suit, Pratt filed suit against his employer, Union Pacific, under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.; FELA)

and the Locomotive Inspection Act (49 U.S.C. § 20701 et seq.) for personal injuries suffered at work. The FELA is a broad remedial statute, which authorizes railroad workers to recover damages for injuries resulting from the employer's or a coworker's negligence. (45 U.S.C. § 51.)

After Pratt filed the suit and while he was on extended medical leave resulting from his injuries, Union Pacific sought additional medical information from him, which he refused to supply on the advice of counsel. When Union Pacific summoned Pratt to a disciplinary hearing for failure to provide the medical information, Pratt sought a preliminary injunction prohibiting Union Pacific from conducting the hearing or from compelling him to attend an extrajudicial medical examination. The trial court found Union Pacific's actions circumvented the established procedures for civil discovery under California law, granted the preliminary injunction, and awarded Pratt $5,000 in sanctions.

The Railway Labor Act (RLA; 45 U.S.C. § 151 et seq.) requires that a "minor dispute" involving the construction of a collective bargaining agreement between a covered carrier and a union must be resolved in an RLA administrative proceeding. Although the RLA grants exclusive jurisdiction to the National Railroad Adjustment Board (Board) to resolve minor disputes, it does not grant the Board jurisdiction over parallel claims arising from the same facts under state or federal law. The test for determining RLA preemption is whether the plaintiff's statutory claim is based upon a wholly independent state or federal right that does not require using the collective bargaining agreement as a standard for resolving that claim.

At issue in this case is whether the RLA preempted the trial court's authority to prohibit Union Pacific from conducting or compelling certain extrajudicial procedures. In determining that question, we must consider whether the California civil rules of discovery grant plaintiff an independent right to protective relief that can be resolved without considering the terms of the collective bargaining agreement. We find it can.

Union Pacific has failed to identify a provision in the collective bargaining agreement that authorizes its actions. However, even if we assume there is such a provision, Union Pacific has failed to explain why its application is necessary to resolve the discovery dispute. Union Pacific also fails to explain why civil discovery is inadequate to protect its legitimate business interests. These failures, coupled with Union Pacific's position that it is no longer seeking extrajudicial discovery of plaintiff's current medical information while maintaining its right to hold a disciplinary hearing to terminate Pratt solely for failing to provide that information, belie its reliance on the collective bargaining agreement. Under these circumstances, the question

whether Union Pacific has misused the discovery process to gain an unfair advantage in the FELA action is a question of fact that may be determined wholly independently of the collective bargaining agreement.

We therefore conclude the trial court had jurisdiction to prohibit extrajudicial discovery because the civil rules of discovery provide independent authority to grant a protective order for misuse of the discovery process. We deem the preliminary injunction a protective order and find the trial court properly granted the requested relief and sanctions.

We shall affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Pratt is a Union Pacific employee who has been employed by the company since 1971 in various capacities, including locomotive engineer. His employment is governed by a collective bargaining agreement[1] between his union (Brotherhood of Locomotive Engineers) and Union Pacific.[2] Pratt alleges that he sustained cumulative injuries to his neck, shoulders, and back while employed by Union Pacific and it is undisputed that he ceased work in January 2006.

Beginning in February 2006, Pratt was granted a medical leave of absence, which he renewed several times over the next few months, each time furnishing Union Pacific with the necessary updated medical information. His requests for extended medical leave were approved through August 27, 2006. The medical report in support of that request, dated June 16, 2006, indicates Pratt was being referred to physical therapy, his prognosis was classified as "permanent limitations expected," a functional capacity evaluation would be performed to determine his level of permanent impairment, and his anticipated return to work date for "light duty" was "after" the evaluation.

Meanwhile, on August 10, 2006, Pratt filed suit in superior court against Union Pacific to recover damages for personal injuries under the FELA (45 U.S.C. § 51 et seq.) and the Locomotive Inspection Act (49 U.S.C. § 20701 et seq.).[3] Union Pacific filed its answer on November 13, 2006,

---

[1] At our request, Union Pacific augmented the record to include the collective bargaining agreement.

[2] Union Pacific purchased Southern Pacific and is the successor in interest to that entity.

[3] Congress has provided for concurrent state and federal court jurisdiction in FELA actions. (45 U.S.C. § 56; *Burnett v. New York Central R. Co.* (1965) 380 U.S. 424, 425, 435 [13 L.Ed.2d 941, 943, 949, 85 S.Ct. 1050].)

discovery was scheduled to take place in 2007,[4] and the matter was set for trial on October 1, 2007, although the trial date has been vacated.[5]

However, on October 3, 2006, prior to any discovery in the FELA action, Union Pacific sent Pratt an ex parte letter advising him that the medical information he had provided was inadequate to support his request for an extension of medical leave. The letter requested updated medical information regarding his current level of function, his treatment plan, prognosis and the results of any diagnostic studies. Receiving no response, Union Pacific sent Pratt a second ex parte request for the same information. Larry Lockshin, Pratt's attorney, objected to the request and informed Union Pacific that Pratt would not provide the medical information and requested that no further letters be sent directly to Pratt as such contact violated the California Rules of Professional Conduct.

Nevertheless, on November 27, 2006, Union Pacific sent Pratt an ex parte "Notice of Investigation" directing him to appear at a disciplinary investigation hearing scheduled for December 7, 2006, to determine whether he had failed to protect his employment status by refusing to provide the requested medical information. Lockshin engaged in several written exchanges with Union Pacific urging it to cancel or continue the hearing until after his request for injunctive relief could be heard in February 2007.

Although Union Pacific rescheduled the hearing several times, it failed to agree to an indefinite postponement of the hearing, which led Pratt to apply for a temporary restraining order, preliminary injunction and monetary sanctions.

The trial court granted the temporary restraining order and on February 28, 2007, it granted a preliminary injunction and awarded $5,000 in sanctions against Union Pacific. The order states that Union Pacific "may neither compel plaintiff to attend a physical [examination] nor commence or maintain disciplinary proceedings against plaintiff for failing to provide documentation to explain his AWOL status. Until after plaintiff's pending FELA lawsuit against UPRR is resolved and this court is divested of its jurisdiction over the parties by entry of a final judgment, the orders of this court shall govern the relationship of the parties. (*Smith v. Union Pacific R. Co.* (D. C. Colo. 1995)

---

[4] After Union Pacific propounded interrogatories on Pratt, he sought a protective order. The trial court denied his application, finding the interrogatories were not excessive and the information sought "appears relevant and necessary for defendant to present an adequate defense."

[5] Although it appears the parties have conducted discovery, the record on appeal does not indicate whether Pratt has provided Union Pacific with any medical reports prepared after June 2006.

878 F.Supp. 171.)" The trial court rejected Union Pacific's position that Pratt's "AWOL" status was a "minor issue" preempted by the RLA. Instead, it found Union Pacific's conduct "circumvents" the established procedures for discovery and its assertion it was merely engaging in medical discovery in a "back to work" case was not "persuasive or credible." Union Pacific now appeals from the order.

## DISCUSSION

### I.

### Railway Labor Act Preemption

Union Pacific contends the trial court lacked subject matter jurisdiction to issue injunctive relief because the RLA preempts California's discovery statutes. It argues that the question of Pratt's obligation to furnish medical information in connection with his medical leave is a "minor dispute" because it requires consideration and interpretation of the terms of the collective bargaining agreement.

Pratt counters that the trial court had jurisdiction to grant the relief because the discovery statutes provide independent authority to protect the integrity of the judicial process. Union Pacific should not be allowed to circumvent the rules of discovery and demand extrajudicial information from a plaintiff by threatening disciplinary action and possible termination of employment.

▮ Although the question raised by the parties has been addressed by courts in other jurisdictions, it is one of first impression in California. Having considered the question, we conclude that the RLA does not preempt California's Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) during the pendency of a FELA action where, as here, the discovery provisions provide an adequate means of obtaining medical information and the employer's use of extrajudicial discovery is merely a pretext to gain an unfair advantage in the underlying action.

### A. *Waiver*

Before turning to the merits of Union Pacific's appeal, we first address Pratt's argument that Union Pacific waived the issue whether it had the right to seek extrajudicial medical discovery. Pratt argues that Union Pacific failed to raise this question in the trial court and in fact expressly waived it by advising the trial court it was no longer interested in receiving medical discovery from Pratt and considered that issue moot. Union Pacific counters that it did not waive the issue because the broad sweep of the trial court's

order compelled it to explain why it has the right to require injured employees to submit medical information to protect their employment status. We agree with Union Pacific on this issue.

Generally, a reviewing court will not consider claims raised for the first time on appeal that could have been but were not presented to the trial court. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [1 Cal.Rptr.3d 90].) Failure to raise a claim may be forfeited or waived. " ' "[F]orfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " ' " (*Cowan v. Superior Court* (1996) 14 Cal.4th 367, 371 [58 Cal.Rptr.2d 458, 926 P.2d 438].)

We find Union Pacific neither waived nor forfeited the issue raised on appeal. It is true Union Pacific advised the trial court that it was no longer *seeking* medical records from Pratt and that that issue was moot. Nevertheless, the question of *its right* to seek medical records was inherent in its opposition to Pratt's request for injunctive relief and in the trial court's order prohibiting it from maintaining "disciplinary proceedings against plaintiff for failing to provide [medical] documentation to explain his AWOL status." Since the issue was fairly litigated and ruled upon by the trial court, it is properly before us.

### B. *Railway Labor Act Preemption—Background*

■ Congress's power to preempt state law derives from the supremacy clause of article VI of the United States Constitution (*Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 208 [85 L.Ed.2d 206, 213, 105 S.Ct. 1904]) and the question whether a federal law preempts state action is a question of congressional intent. (*Hawaiian Airlines, Inc. v. Norris* (1994) 512 U.S. 246, 252 [129 L.Ed.2d 203, 211, 114 S.Ct. 2239] (*Norris*).)

■ By enacting the RLA, Congress established a comprehensive administrative framework for resolving labor disputes for the purpose of promoting stability in labor-management relations of common carriers subject to the RLA. (*Norris, supra*, 512 U.S. at p. 252 [129 L.Ed.2d at p. 211]; 45 U.S.C. § 151a.) To accomplish this goal, the RLA provides "a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions' . . . ." (512 U.S. at p. 248 [129 L.Ed.2d at p. 208].)

There are two classes of disputes subject to the arbitral process. The first class, referred to as "major" disputes, involves " ' "the formation of collective [bargaining] agreements or efforts to secure them." ' " (*Norris, supra*, 512 U.S. at p. 252 [129 L.Ed.2d at p. 211], quoting *Consol. Rail Corp. v.*

*Railway Labor Executives* (1989) 491 U.S. 299, 302 [105 L.Ed.2d 250, 261, 109 S.Ct. 2477] (*Conrail*).) The second class, referred to as "minor" disputes, involve " 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.' " (*Norris*, at p. 253 [129 L.Ed.2d at p. 212], quoting *Trainmen v. Chicago R. & I. R. Co.* (1957) 353 U.S. 30, 33 [1 L.Ed.2d 622, 625, 77 S.Ct. 635].) In short, " 'major disputes seek to create contractual rights, minor disputes to enforce them.' " (*Norris*, at p. 253 [129 L.Ed.2d at p. 212], quoting *Conrail, supra*, 491 U.S. at p. 302 [105 L.Ed.2d at p. 261].)

Minor disputes must be adjudicated in accordance with RLA grievance procedures, which begin with internal dispute resolution procedures, and if not settled, are then submitted to the Board or a Public Law Board for compulsory arbitration. (45 U.S.C. § 153(i); *Atchison T. & S. F. R. Co. v. Buell* (1987) 480 U.S. 557, 563 [94 L.Ed.2d 563, 571, 107 S.Ct. 1410] (*Buell*); *Hendley v. Central of Georgia R. Co.* (5th Cir. 1980) 609 F.2d 1146, 1151.)

However, the RLA does not vest the Board with exclusive jurisdiction to resolve all disputes that arise between employees and their employer (*Buell, supra*, 480 U.S. at pp. 564–565 [94 L.Ed.2d at pp. 572–573]) nor does it preempt a state claim merely because the " 'same factual considerations' " are involved in resolving both the minor dispute and the state claim. (*Norris, supra*, 512 U.S. at p. 262 [129 L.Ed.2d at p. 217]; see also *Buell, supra*, 480 U.S. at p. 559 [94 L.Ed.2d at p. 569].)

In *Norris*, the Supreme Court narrowed the test for determining RLA preemption, adopting the test used by the court in *Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 408–410 [100 L.Ed.2d 410, 420–421, 108 S.Ct. 1877] (*Lingle*) to determine preemption under the Labor-Management Relations Act, 1947. (29 U.S.C. § 185.)[6] The RLA only preempts resolution of minor disputes, defined as disputes "grounded in the [collective bargaining agreement] . . . involving the interpretation or application of existing labor agreements." (*Norris, supra*, 512 U.S. at p. 256 [129 L.Ed.2d at p. 213].)

Therefore, to determine whether a claim is preempted by the RLA, the court must look to the source of the right asserted by the plaintiff. (*Norris, supra*, 512 U.S. at pp. 257–258 [129 L.Ed.2d at p. 214], citing *Buell, supra*, 480 U.S. at pp. 564–565 [94 L.Ed.2d at pp. 572–573].) When a plaintiff

---

[6] *Norris* "essentially overruled some circuit's prior decisions holding that the RLA's preemptive sweep was broader than that of [the Labor Management Relations Act] § 301 [of 29 U.S.C. § 185]." (*Fry v. Airline Pilots Ass'n, Intern.* (10th Cir. 1996) 88 F.3d 831, 836, fn. 6; accord, *Espinal v. Northwest Airlines* (9th Cir. 1996) 90 F.3d 1452, 1456; *Gay v. Carlson* (2d Cir. 1995) 60 F.3d 83, 87.)

contends an employer's actions violate rights protected by the collective bargaining agreement, the matter is preempted by the RLA. (*Norris, supra,* at p. 257 [129 L.Ed.2d at p. 214].) When a plaintiff claims the employer's actions violate a state law obligation, the matter is not preempted if the state claim is wholly independent of the collective bargaining agreement and " 'can be resolved without interpreting' " the collective bargaining agreement. (*Id.* at p. 262 [129 L.Ed.2d at p. 217], quoting *Lingle, supra,* 486 U.S. at pp. 408–410 [100 L.Ed.2d at pp. 420–421].)

The high court in *Norris* rejected the argument that the RLA preempts a state law claim if the employer's action is " 'arguably justified' " by the terms of the collective bargaining agreement (italics omitted). That standard "was employed only for policing the line between major and minor disputes" and "said nothing about the threshold question whether the dispute was subject to the RLA in the first place." (*Norris, supra,* 512 U.S. at pp. 265–266 [129 L.Ed.2d at pp. 219–220].)[7]

*Norris* involved an airline mechanic who refused to certify the safety of a plane he considered unsafe and then reported his safety concerns to the Federal Aviation Administration. His employment was governed by a collective bargaining agreement and the airline terminated him for refusing to sign the record. While pursuing his remedies under the collective bargaining agreement, he also filed a state court complaint for wrongful discharge alleging violations of public policy under the Federal Aviation Act of 1958 and Hawaii's Whistleblower Protection Act. (*Norris, supra,* 512 U.S. at p. 250 [129 L.Ed.2d at pp. 209–210].) In holding the RLA did not preempt the independent state claims, the Supreme Court found that under Hawaii law, the only issue to be determined was whether the mechanic's termination was retaliatory, which was a purely factual question that did not require interpretation or application of the collective bargaining agreement. (*Id.* at p. 266 [129 L.Ed.2d at p. 220].)

The *Norris* test also applies to independent rights arising out of federal law and it is now well established that claims brought under the FELA are not preempted by the RLA (*Buell, supra,* 480 U.S. at p. 565 [94 L.Ed.2d at p. 573]), nor are claims brought under the Americans with Disabilities Act of 1990. (42 U.S.C. § 12111; *Saridakis v. United Airlines* (9th Cir. 1999) 166 F.3d 1272, 1276–1277.)

---

[7] As long as "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." (*Livadas v. Bradshaw* (1994) 512 U.S. 107, 124 [129 L.Ed.2d 93, 110, 114 S.Ct. 2068]; see *Lingle, supra,* 486 U.S. at p. 413, fn. 12 [100 L.Ed.2d at p. 423, fn. 12] ["A collective-bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled."].)

C. *Pratt's Claim Is Wholly Independent of the Collective Bargaining Agreement*

As stated, Pratt's present claim for injunctive relief arises in the context of an underlying FELA suit. The FELA is a "broad remedial statute," which authorizes railroad workers to recover damages for injuries resulting from the employer's or a coworker's negligence. (*Buell, supra,* 480 U.S. at pp. 561–562 [94 L.Ed.2d at pp. 570–571]; see 45 U.S.C. § 51.)[8]

This case raises a corollary to that question: does the RLA preempt California's discovery statutes during the pendency of a FELA action filed in a court of this state so as to deprive the trial court of subject matter jurisdiction to prohibit the employer from engaging in extrajudicial discovery in order to gain an unfair advantage in the FELA suit? To answer that question, we consider whether the issuance of a protective order under California's Civil Discovery Act (Code Civ. Proc., § 2016.010 et seq.) (the discovery act)[9] is wholly independent of the collective bargaining agreement and we conclude the discovery act provides an independent right that does not require interpretation or application of the collective bargaining agreement.

Union Pacific relies on two administrative decisions[10] and one appellate decision (*Union Pac. R. Co. v. Dierker* (Mo. 1998) 961 S.W.2d 816) to support its claim of preemption. We find these authorities are nonbinding and inapposite. *Dierker,* while factually similar to the case at bench, is inapposite because in finding RLA preemption, the Missouri Supreme Court found Missouri state law did not confer a wholly independent right to a protective order. (See *Partida v. Union Pacific R.R. Co.* (C.D.Cal. 2004) 221 F.R.D. 623, 627 [finding *Dierker* nonbinding and unpersuasive].)

Union Pacific also urges us to apply the three-pronged test articulated in *Miller v. AT & T Network Systems* (9th Cir. 1988) 850 F.2d 543 (*Miller*).[11]

---

[8] A primary purpose of the FELA is to eliminate a number of traditional defenses to tort liability and prohibit covered carriers from adopting any regulation or entering into any contract to limit its FELA liability. (*Buell, supra,* 480 U.S. at p. 561 [94 L.Ed.2d at p. 570].)

[9] All further section references are to the Code of Civil Procedure unless otherwise specified.

[10] *International Brotherhood of Electrical Workers v Union Pacific Railroad* (1995) Public Law Board No. 2766 and *Brotherhood of Maintenance of Way Employees v. Southern Pacific Transportation Co.* (1977) Public Law Board No. 1795. Public Law Boards are arbitration boards authorized by the RLA for the resolution of minor disputes involving a collective bargaining agreement. (45 U.S.C § 153(i); *Buell, supra,* 480 U.S. at p. 563 [94 L.Ed.2d at p. 571].)

[11] Under that test, the court must consider: "(1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a

The Ninth Circuit applied that test to determine whether a state law disability discrimination claim was wholly independent of the collective bargaining agreement for purposes of assessing Labor Management Relations Act (29 U.S.C. § 185) preemption. However, Union Pacific cites no authority that this test has ever been applied in the context of a discovery dispute or in a FELA action. Moreover, as the court in *Miller* explained, a court need not apply this test if the particular collective bargaining agreement contains no relevant provisions, explicit or implied, that might be interpreted. (*Miller, supra,* 850 F.2d at p. 548, fn. 2.) The *Miller* test is inapplicable here because Union Pacific failed to identify any term of the collective bargaining agreement that authorizes its requests or imposes a duty on the employee to furnish such information. While it cites two rules in a document entitled "General Code of Operating Rules" (GCOR), it fails to identify any rule in that document or any term in the collective bargaining agreement that makes the GCOR a part of the collective bargaining agreement.

■ We therefore turn for guidance to the federal district court cases cited by Pratt. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352 [276 Cal.Rptr. 326, 801 P.2d 1077] [state courts are bound by United States Supreme Court decisions interpreting the federal Constitution while lower federal court decisions are merely persuasive authority]; *Trade Center Properties, Inc. v. Superior Court* (1960) 185 Cal.App.2d 409, 411–412 [8 Cal.Rptr. 345] [When construing the discovery act, the court may consider "federal decisions for such persuasive value as their reasoning may have."].)

In *Smith v. Union Pacific R. Co., supra,* 878 F.Supp. 171, the case relied on by the trial court, after a railroad employee filed a FELA action in federal district court, the court issued a protective order that restrained the railroad from compelling the employee to attend a back-to-work physical examination by its doctors or disciplining him under the collective bargaining agreement for failing to do so. The employee argued that the exam was unnecessary because he had already attended two previous physical examinations and the railroad was using the examination to gain unfair advantage in the FELA litigation. The court rejected the railroad's preemption argument. It found the physical exam and the disciplinary proceeding constituted discovery within the meaning of rule 26(b)(1) of the Federal Rules of Civil Procedure (28 U.S.C.) (hereafter federal rules) and these procedures were part of the discovery process, which the court had the authority to manage and control. The court reasoned that "the 'back-to-work' physical at issue bears directly on the issues pending in this case. It is entirely possible Smith could say

standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.' " (*Miller, supra,* 850 F.2d at p. 548, fn. omitted.)

something against his interest during the examination that could be used against him in this action. Should Smith continue to refuse to attend the physical and be fired pursuant to the terms of the collective bargaining agreement . . . , [defendant] could significantly reduce the nature and amount of damages for which it is liable and obtain an unfair advantage in this litigation." (878 F.Supp. at pp. 172–173, fn. omitted.)

Similarly, in *Riensch v. Union Pacific R. Co.* (D.Colo. 1998) 12 F.Supp.2d 1136, a railroad employee was granted a protective order preventing his employer from requiring him to attend a "fitness-for-duty" physical examination and from disciplining him for failing to do so. As a result of his injuries, the employee ceased working in 1997 and was told by his physician that he would be unable to return to work until July 2000. The railroad's demand that the employee attend the scheduled examinations and evaluations was made after the employee filed a FELA action. Relying on *Smith v. Union Pacific R. Co., supra,* 878 F.Supp. 171, the district court found the "fitness-for-duty" examination raised a "discovery dispute" rather than a "minor dispute" and therefore it had discretion to issue the protective order under rule 26(c)(1) of the federal rules. In the court's view, it was "inconceivable that Congress afforded injured workers the right to seek recovery pursuant to the FELA in federal court but denied to those same injured workers the ability to invoke the Federal Rules . . . during the pendency of their FELA actions. . . . [T]he Federal Rules . . . govern this FELA action . . . [and] provide for discovery in the form of physical examinations under Rule 35 upon a showing of good cause. Thus, [the railroad's] order requiring [the employee] to attend physical examinations circumvents the established procedures for discovery set forth in the federal rules." (*Riensch, supra,* at p. 1139.) No interpretation of the collective bargaining agreement was required to determine whether the demand for a physical examination violated the federal rules since the railroad's duty to proceed in accordance with those rules was not a right or a duty grounded in the collective bargaining agreement. The court concluded there was good cause for issuance of the protective order because any interest the railroad had in obtaining medical information concerning the plaintiff was adequately protected by the federal rules. (*Riensch,* at p. 1140.)

In *Bernal v. Southern Pacific Transp. Co.* (E.D.Cal. 2000) 196 F.R.D. 371, a totally disabled railroad employee who was receiving a disability annuity was granted a protective order during the pendency of his FELA suit. The order prohibited the railroad from taking disciplinary action against him for failing to respond to ex parte written inquiries concerning his current medical condition. The court concluded the employee possessed a right to the protection of the federal rules governing discovery and that the court did not have to look to the collective bargaining agreement to determine whether the railroad's conduct contravened the discovery rules. (*Bernal,* at p. 373.) The court found the railroad's claim that it was exercising its rights under the

collective bargaining agreement to monitor the disability status of its current employee lacked credibility. In so finding, the court considered the railroad's refusal to stipulate that it would not seek to use any of the acquired medical information in the FELA litigation as well as evidence that an employee receiving a disability pension has no need for updated medical information. (*Bernal*, at p. 373, fn. 3; see also *Vicary v. Consolidated Rail Corp.* (N.D. Ohio 1996) 942 F.Supp. 1146, 1149 [protective order granted under federal rule 26(c) to prohibit the railroad from employing unjustifiable extrajudicial procedures that circumvent the employee's right to counsel]; *Partida v. Union Pacific R. R. Co., supra*, 221 F.R.D. 623 [protective order granted under federal rule 26(c) prohibiting employer from compelling him to attend a medical examination or face discipline and possible termination].)

■ We find these cases persuasive and applicable to the discovery act when a FELA complaint is filed in the superior court of this state. Just as it is inconceivable that Congress afforded injured workers the right to seek recovery under FELA but denied those same workers the protections of the federal rules during the pendency of the FELA suits (*Riensch, supra*, 12 F.Supp.2d at p. 1139), it is equally inconceivable Congress afforded injured workers the right to file their FELA claims in *state court* (45 U.S.C. § 56) but denied them the right to invoke the state's civil discovery rules applicable to the state court litigation. This is particularly true where as here the rules of discovery serve the same purpose, authorize the same scope of discovery, and provide for similar protective relief as do the federal rules.

■ As originally enacted, the discovery act was proposed as an adaptation of the federal rules of discovery "with the express purpose of broadening discovery proceedings in California so that they would be comparable with those in the federal courts." (*Gorman Rupp Industries, Inc. v. Superior Court* (1971) 20 Cal.App.3d 28, 30 [97 Cal.Rptr. 377].) Although both schemes have since been amended, the discovery act continues to share the same purpose as the federal rules to make discovery a " 'simple, convenient, and inexpensive' means of revealing the truth and exposing false claims" (*American Home Assurance Co. v. Société Commerciale Toutélectric* (2002) 104 Cal.App.4th 406, 425 [128 Cal.Rptr.2d 430], quoting *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266]) and to that end, the California rules of civil discovery are liberally construed in favor of disclosure and the trial court is vested with wide discretion to grant or deny discovery. (*Emerson Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1107 [68 Cal.Rptr.2d 883, 946 P.2d 841].)

Like federal rule 26(b)(1), the scope of discovery under the discovery act extends to nonprivileged matters that are admissible in evidence or reasonably calculated to lead to the discovery of admissible evidence. (§ 2017.010.)

The defendant has an unqualified right to demand one physical examination in a suit for personal injuries (§ 2032.220, subd. (a)) and the choice of the examining physician generally belongs to the defendant (*Edwards v. Superior Court* (1976) 16 Cal.3d 905, 912 [130 Cal.Rptr. 14, 549 P.2d 846]), although the plaintiff has a right to the presence of counsel during the examination. (*Urbaniak v. Newton* (1991) 226 Cal.App.3d 1128, 1134 [277 Cal.Rptr. 354].) Additional physical examinations may be obtained with leave of court. (§ 2032.310, subd. (a).)

The discovery act vests the trial court with discretion to grant a protective order that limits the scope of discovery if the court determines the "burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence." (§ 2017.020, subd. (a).) Nevertheless, Union Pacific claims Pratt's obligation to furnish the requested medical information requires consideration and interpretation of the collective bargaining agreement. We disagree.

First, Union Pacific fails to identify any term of the collective bargaining agreement that authorizes its requests or imposes a duty on the employee to furnish such information.

Second, even assuming the collective bargaining agreement authorizes Union Pacific's requests, the question before us is not whether Union Pacific's requests and orders are authorized by and in conformance with the collective bargaining agreement, but whether its requests and orders violate the state's civil discovery provisions and are merely a pretext for gaining an unfair advantage in this action. That question is one of fact for the court's determination. (*Norris, supra,* 512 U.S. at p. 266 [129 L.Ed.2d at p. 220]; *Hendley v. Central of Georgia R. Co., supra,* 609 F.2d at pp. 1150–1151.)

The trial court found Union Pacific's position lacked credibility and we find the evidence supports that finding. Union Pacific's stated purpose in making extrajudicial requests for medical information and a medical examination was to determine whether Pratt's current medical condition supported an extension of his medical leave. While this reason appears on its face to be reasonably related to a legitimate business interest that may be authorized by the collective bargaining agreement, Union Pacific's stated reasons are belied by its failure to explain why civil discovery is inadequate to protect its business interests. In the absence of a credible reason justifying a contrary conclusion, we find civil discovery is adequate because the same information is relevant to determine Pratt's damages in the underlying FELA action and is therefore discoverable. (§ 2017.010.)

Union Pacific's insistence on holding a disciplinary hearing also belies its position. Union Pacific advised the trial court it was no longer seeking

medical information from Pratt and that the disciplinary hearing would only cover a single violation for failing to preserve his employment status. But this assertion is disingenuous because that alleged violation was to be based solely on Pratt's failure to comply with Union Pacific's extrajudicial demands for medical information, which Union Pacific now claims it no longer wants. Pratt would not be entitled to the representation of counsel at the disciplinary hearing and it could result in the termination of his employment benefits and a reduction in the amount of compensable damages in the FELA action. Under these circumstances, the disciplinary hearing is nothing but a pretext to obtain an unfair advantage in the FELA action by circumventing the rules of discovery and interfering with Pratt's right to counsel.

We therefore conclude the discovery act provides a wholly independent state right for a protective order that is necessary to protect the integrity of the FELA action. Accordingly, we hold that the trial court had subject matter jurisdiction to grant protective relief and deem the temporary injunction a protective order.

## II.

### Sanctions

Union Pacific contends the trial court abused its discretion by imposing sanctions of $5,000 because the law is unsettled. It argues that since there is no controlling appellate authority on point and its arguments have only been rejected by federal district courts, sanctions were improper. Pratt contends the sanctions are proper because time and again federal and state courts throughout California have rejected Union Pacific's RLA preemption argument. We find the sanctions did not constitute an abuse of discretion.

In support of his motion for sanctions, Pratt presented documentation establishing that Union Pacific has been told by at least 12 state and federal court judges in previous FELA cases that its position on the question raised in this appeal is without legal basis. It has also been admonished by those courts to cease its illegal ex parte contacts with plaintiffs for the purpose of obtaining medical information, yet Union Pacific continues to engage in these practices. The trial court granted Pratt $5,000 in sanctions after finding Union Pacific's position was not "persuasive or credible."

Section 2023.030, subdivision (a) vests the trial court with discretion to impose monetary sanctions for misuse of the discovery process, which is defined to include "[p]ersisting, over objection and without *substantial justification*, in an attempt to obtain information or materials that are outside the

scope of permissible discovery" (§ 2023.010, subd. (a), italics added), "[u]sing a discovery method in a manner that does not comply with its specified procedures" (*id.*, subd. (b)), or "[e]mploying a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." (*Id.*, subd. (c).)

" '[T]he purpose of discovery sanctions "is not 'to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits,' " . . . but to prevent abuse of the discovery process and correct the problem presented . . . .' " (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 301 [57 Cal.Rptr.3d 18], fn. omitted.) Monetary sanctions encourage "voluntary compliance with discovery procedures by assessing the costs of compelling compliance against the defaulting party." (*Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1179 [86 Cal.Rptr.2d 917].)

When imposing discovery sanctions, the trial court has broad discretion (*Biles v. Exxon Mobile Corp.* (2004) 124 Cal.App.4th 1315, 1327 [22 Cal.Rptr.3d 282]) and its order will not be reversed on appeal in the absence of a manifest abuse of discretion that exceeds the bounds of reason, resolving all evidentiary conflicts in favor of its ruling. (*Sears, Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1350 [32 Cal.Rptr.3d 717]; *Espinoza v. Classic Pizza, Inc.* (2003) 114 Cal.App.4th 968, 975 [8 Cal.Rptr.3d 381].)

Citing *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179], which defines frivolous appeals, Union Pacific argues that a court should not impose sanctions for vigorous but proper advocacy when there is no controlling authority on the question raised. Union Pacific applies the wrong standard and ignores the trial court's ruling, which imposed sanctions because it found Union Pacific's position was lacking in credibility and its actions circumvented the discovery process.

As stated, the trial court has discretion to impose monetary sanctions when one party *persists*, over objection and without substantial justification, in an attempt to obtain information outside the scope of permissible discovery. (§§ 2023.010, subd. (a), 2023.030, subd. (a).) That is precisely what Union Pacific did. Pratt's counsel objected to Union Pacific's ex parte demands for medical information and made every effort to secure Union Pacific's agreement to postpone the disciplinary hearing until the court heard his motion for injunctive relief. Instead, Union Pacific gave equivocal responses while failing to agree to the requested postponement, forcing counsel to seek a temporary restraining order.

This record clearly supports the trial court's finding that Union Pacific's actions circumvented the discovery process and were without substantial

justification. Because the sanctions serve not to punish but rather to encourage voluntary compliance with the discovery procedures, we find the trial court did not abuse its discretion by awarding monetary sanctions under the circumstances in this case.

### DISPOSITION

The order for injunctive relief is deemed a protective order and is affirmed as such. The order for sanctions is also affirmed. Costs are awarded to plaintiff.

Robie, J., and Butz, J., concurred.

On November 19, 2008, the opinion was modified to read as printed above.