Filed 4/9/26  Community Education Foundation v. Eshoo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COMMUNITY EDUCATION FOUNDATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GEORGE P. ESHOO et al.,<br><br>Defendants and Appellants. | H052717<br>(Santa Clara County<br>Super. Ct. No. 23CV421976) |

**The Court**[1]

This is an appeal from an order granting monetary sanctions of $6,081.28 on a motion to compel further responses to interrogatories.  Appellant George P. Eshoo argues that the trial court lacked jurisdiction to impose the sanctions on him because respondent Community Education Foundation's (CEF's) interrogatories were premature and were based on writs of attachment that had been secured by insufficient bonds.  We conclude that this argument is based on a misinterpretation of the statutory language and a misunderstanding of the trial court's authority under the Civil Discovery Act.  We affirm.

---

[1] Before Danner, Acting P. J., Bromberg, J., and Chung, J. (Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution).

## I.    BACKGROUND

CEF brought the present action against Eshoo and co-defendant 32 & Bruce Partners LLC (32 & Bruce) on August 29, 2023, alleging that they breached their obligations under a promissory note for the principal sum of $100,000.00, plus interest, late fees, and attorney's fees.  After filing the complaint, CEF filed applications for writs of attachment against both defendants, seeking to secure $133,000.00 against them "[j]ointly and severally."  Eshoo is the "manager" of 32 & Bruce, as well as its attorney and agent for service of process.[2]

On March 7, 2024, the trial court held a hearing on the writ applications and granted them, issuing right to attach orders and orders for the issuance of writs of attachment.  In addition, the court ordered CEF to file bonds totaling $10,000 (i.e., $5,000 per defendant) as security for the writs.  The hearing was unreported, and so we have no transcript for it.

The next hearing on August 21, 2024 was reported, and the trial court heard several matters together, including the discovery motion at issue on this appeal.  The other matters were: (1) defendants' application to set aside the prior right to attach order and to increase the amount of the bonds, (2) two applications from CEF for additional writs of attachment against Eshoo and 32 & Bruce, and (3) a claim of exemption by Eshoo as to any additional writ of attachment.  During the hearing, the parties and the court agreed that the amount of the bonds that had previously been set should be increased to $10,000 per defendant, as requested by Eshoo and 32 & Bruce.  At the same time, the court also noted that at the previous hearing in March, it had asked the parties about the appropriate "amount of the bonds . . . for the two writs of attachment that were granted already," and Eshoo had "said nothing" on behalf of defendants: "And so [the

---

[2] Although 32 & Bruce is listed on the notice of appeal and in the briefs as an appellant, the appealed order was directed only to Eshoo.  As a general matter, a client does not have standing to appeal discovery sanctions that were imposed only against its attorney.  (See *Dalessandro v. Mitchell* (2019) 43 Cal.App.5th 1088, 1090-1091.)

court] was not aware that you had any issue with [$5,000 per defendant;] the opportunity was given for you to address that. You did not."

In addition to granting the application to increase the bond amounts, the trial court granted CEF's applications for additional writs of attachment against Eshoo and 32 & Bruce ($42,000, jointly and severally), and it granted Eshoo's claim of exemption as to the new writs but not as to the previously issued writs.

Finally, with respect to the discovery motion, the court ordered Eshoo to provide the requested interrogatory responses (or post a separate bond) within 10 days of its formal order. It found "that the objections that were made were not meritorious and were frivolous and overbroad," and based on that conclusion, it ordered monetary sanctions against Eshoo. This ruling was confirmed in a formal order filed on September 16, 2024. The court identified and imposed discovery sanctions "in the amount of $6,000, plus costs of $60 for filing fees of the motion and $21.28 for filing Mr. Skaggs' declaration ordered by [another judge] (for a total of $6,081.28)."

Eshoo filed a timely appeal of the discovery order, challenging only the imposition of monetary sanctions. That is the sole issue presently before us. Although the trial court subsequently issued a summary judgment ruling, those later proceedings are the subject of a separate, consolidated appeal (Case Nos. H053402 & H053795).

## II. DISCUSSION

### A. Appellate Jurisdiction

Interlocutory discovery orders are normally not appealable before a final judgment is entered, but Code of Civil Procedure section 904.1 makes an exception for "an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)[3]." (§ 904.1, subd. (a)(12); see also *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 868.) Because

_____

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

the amount of sanctions at issue here is $6,081.28, we have jurisdiction over this direct appeal of the trial court's order.

## B.     The Standard of Review

Management of discovery is generally within a trial judge's discretion, and we review a discovery ruling for abuse of discretion.  (*O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 561 (*O&C*); *Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).)  That includes discovery sanctions: a trial court has "broad discretion in deciding whether to impose sanctions and in setting the amount of monetary sanctions." (*Cornerstone*, 56 Cal.App.5th at p. 789, citing *Pratt v. Union Pacific Railroad Co.* (2008) 168 Cal.App.4th 165, 183.)

"The test for abuse of discretion is whether the trial court's decision exceeded the bounds of reason.  [Citation.]" (*Cornerstone*, *supra*, 56 Cal.App.5th at p. 789.)  A discovery ruling will be set aside " 'only when it has been established that there was no legal justification for the order.' " (*O&C*, *supra*, 42 Cal.App.5th at p. 561, quoting *Save Open Space Santa Monica Mountains v. Superior Court* (2000) 84 Cal.App.4th 235, 245-246.)  "Appellate courts must keep liberal policies of discovery statutes in mind when reviewing decisions denying or granting discovery." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 987.)

## C.     Relevant Provisions of the Code of Civil Procedure

### 1.     The Civil Discovery Act

The Civil Discovery Act governs discovery in civil matters, and it is contained in title 4 of part 4 of sections 2016.010–2036.050.  Section 2017.010 describes the broad scope of permissible discovery: "Unless otherwise limited by order of the court in accordance with this title, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the

determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence. Discovery may relate to the claim or defense of the party seeking discovery or of any other party to the action. Discovery may be obtained of the identity and location of persons having knowledge of any discoverable matter, as well as of the existence, description, nature, custody, condition, and location of any document, electronically stored information, tangible thing, or land or other property." A plaintiff is allowed to propound interrogatories on another party without leave of court "at any time that is 10 days after the service of summons on, or appearance by, that party, whichever occurs first." (§ 2030.020, subd. (b).)

In this case, because CEF sought writs of attachment at the outset of the trial court proceedings, the parties focus most of their briefing on section 485.230, which states: "Where a right to attach order has been issued by the court, a plaintiff may discover, through any means provided for by, and subject to the protections included in, Title 4 (commencing with Section 2016.010) of Part 4, the identity, location, and value of property in which the defendant has an interest." In other words, section 485.230 expressly invokes the Civil Discovery Act and provides that information regarding a defendant's property—its "identity, location, and value"—is discoverable after the court issues a right to attach order against that defendant.

### 2. Writs of Attachment

Section 485.230 is part of a series of code sections that describe the procedure for obtaining a writ of attachment. (See pt. 2, tit. 6.5 (§§ 481.010–493.060).) Attachment is a provisional remedy that provides for the seizure of a defendant's property pending the outcome of any trial if the plaintiff can show the "probable validity" of its claim. (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1476.) In order to obtain a writ of attachment, a plaintiff must strictly follow the procedures set

5

forth in the code. In addition, the plaintiff must file a bond (or "undertaking") that will compensate the defendant if it turns out that property was wrongfully attached. (§ 489.210.) The standard amount of such an undertaking is $10,000, though it may be increased by the court upon an objection by the defendant. (§ 489.220, subds. (a) & (b).)

### 3. Monetary Sanctions

As for sanctions, there are various provisions in the Civil Discovery Act that authorize sanctions for a party's misuse of the discovery process, depending on the method of discovery. Interrogatories are governed by section 2030.010 et seq. In particular, section 2030.300, subdivision (d) states that the trial court "shall impose a monetary sanction . . . against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a further response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of a sanction unjust." Thus, a monetary sanction is generally required and expected against the losing party ("shall impose"), with only limited exceptions.

The purpose of discovery sanctions is compensatory, not punitive. (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 74.) They are designed to put the requesting party in the same position it would have been in if it had received the requested discovery, but not a better position. (*Ibid.*)

### D. Analysis

#### 1. The Trial Court's Authority to Impose Sanctions Under Section 485.230 and the Civil Discovery Act

In the present case, the trial court granted the motion to compel and determined that monetary sanctions were called for because Eshoo's objections to the interrogatories and his opposition to the motion to compel further responses were both "made without substantial justification." Eshoo's primary argument on appeal is that the trial court did not have the authority (or as Eshoo puts it, "jurisdiction") to impose these sanctions on

him because they were based on interrogatories that were premature, and the reason the interrogatories were premature is that the court had not yet issued valid writs of attachment supported by sufficient bonds. According to Eshoo, the minimum statutory bond amount is $10,000 *per defendant*; because the bonds here were originally ordered to be only $5,000 per defendant, they were a nullity, making any discovery based on them improper under section 485.230.

As CEF points out, this argument misreads section 485.230. The statute does not make discovery dependent on the issuance of valid writs of attachment; rather, the statute permits a plaintiff to conduct discovery "[w]here a right to attach order has been issued by the court." (§ 485.230.) There is a material difference between a *right to attach order*, which is issued by the judge, and a *writ of attachment*, which is issued by the clerk of court after the judge has signed the right to attach order *and* "upon the filing of an undertaking as provided by Section 489.210 and 489.220." (§ 484.090, subd. (b) & § 485.220, subd. (a).) Section 485.230 requires only the former, not the latter, and so Eshoo's arguments under *Vershbow v. Reiner* (1991) 231 Cal.App.3d 879 and *North Hollywood Marble Company v. Superior Court* (1984) 157 Cal.App.3d 683—both of which addressed the sufficiency of the undertaking for a valid writ of attachment—are beside the point. In this case, there is no dispute that the trial court issued right to attach orders on March 8, 2024 after a hearing on March 7, 2024, and so we conclude that the interrogatories propounded by CEF later that same month regarding the "identity, location, and value" of Eshoo's property were permissible under section 485.230.

There is nothing in section 485.230 that requires right to attach orders from the trial court to be legally unassailable. Even if Eshoo were correct that the orders here were flawed in that they originally identified an insufficient amount of bond—a question that we do not need to decide and a question as to which Eshoo has identified no relevant authority in any event—it does not negate the validity of discovery permitted by those orders. To hold that discovery must await the issuance of an unimpeachable right to

7

attach order, or must await the filing of an indisputably sufficient undertaking, would be inconsistent with the purpose of section 485.230, which was to ensure that a plaintiff could obtain pre-judgment discovery regarding the identity, location, and value of a defendant's property in attachment proceedings, rather than having to wait for post-judgment enforcement to find out this information. (See Sen. Com. on Judiciary, com. on Assem. Bill No. 2616 (1991-1992 Reg. Sess.) as amended Aug. 12, 1992, pp. 4-5 [purpose of bill is to provide for pre-judgment discovery of a debtor's assets].)[4]

Eshoo does not argue that his interrogatory responses were actually adequate, only that the trial court should have sustained his objection that the discovery was premature.[5] Given our conclusion that the interrogatories were not premature under either section 485.230 or the Civil Discovery Act, we reject the notion that the trial court somehow lacked jurisdiction to rule on the motion to compel or to order monetary sanctions.

### 2. The Trial Court's Authority Under Rule 3.1312 of the California Rules of Court

Eshoo raises an additional argument that does not change the outcome of this appeal, but which we address here given the tremendous amount of briefing that he devotes to it—over 20 pages. Eshoo argues that the trial court "violated" rule 3.1312 of

---

[4] Indeed, even if Eshoo were correct that section 485.230 permits discovery only after the filing of a sufficient bond, he does not explain why the more general provisions of the Civil Discovery Act would not apply to this civil action. As mentioned above, section 2017.010 allows "any party" to "obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or the determination of any motion made in that action," and section 2030.020, subdivision (b) allows a plaintiff to propound interrogatories without leave of court "at any time that is 10 days after the service of summons on, or appearance by, that party, whichever occurs first." Nevertheless, because neither party addressed this point in their briefs our decision focuses on the interpretation of section 485.230.

[5] In his reply brief, Eshoo argues that discovery of his financial information would violate his "constitutional rights to privacy," but he does not appear to have made this argument to the trial court. We also do not see it in the opening brief, and so it has been forfeited. (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6 ["we do not consider arguments raised for the first time in a reply brief"].)

the California Rules of Court when, at the March 7, 2024 hearing, it instructed CEF to email copies of the proposed orders after hearing directly to the Department 18 email address, with a copy to Eshoo, rather than electronically file them with the court clerk's office. The trial court then "prematurely" signed the proposed orders on March 8, 2024 without giving Eshoo an opportunity to object to them. In doing so, the trial court violated due process and also failed to preserve the record for appeal. We find this argument to be unavailing for multiple reasons.

First, it fails to account for the plain language of the rule. Rule 3.1312(a) provides, in relevant part: "Unless the parties waive notice or the court orders otherwise, the party prevailing on any motion must, within five days of the ruling, serve by any means authorized by law and reasonably calculated to ensure delivery to the other party or parties no later than the close of the next business day a proposed order for approval as conforming to the court's order. Within five days after service, the other party or parties must notify the prevailing party as to whether or not the proposed order is so approved. The opposing party or parties must state any reasons for disapproval." Rule 3.1312(b) then states: "The prevailing party must, upon expiration of the five-day period provided for approval, promptly transmit the proposed order to the court together with a summary of any responses of the other parties or a statement that no responses were received." Thus, rule 3.1312 sets forth the default procedure for the submission of proposed orders after hearing, but it is subject to an important caveat in the very first sentence: "Unless the parties waive notice *or the court orders otherwise*." (Cal. Rules of Court, rule 3.1312(a), italics added.) In this case, the trial court noted that it had in fact ordered otherwise ("I specifically directed otherwise"), in order to ensure that the documents did not "get lost" by the clerk's office or "go[] to the wrong queue." Because rule 3.1312 expressly allows trial courts to set their own procedures for submitting proposed orders, we have no basis for determining that the trial court's instructions to the parties were inconsistent with the rules of court.

9

Second, Eshoo provides no authority for the proposition that the trial court's departure from the default procedures set forth in rule 3.1312 was a due process violation. In fact, the only case law on point indicates that such a departure is not a problem at all, much less one of constitutional dimension. (See *Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093, 1145, fn. 11 ["[W]e are not aware of any authority that concludes it is a violation of due process for the decision maker to adopt a proposed decision in an administrative or judicial proceeding as its final ruling. Respondents cite no authority that suggests simply the adoption of a proposed decision is improper."], citing Cal. Rules of Court, rule 3.1312.) Like the Court of Appeal in *Sweeney*, we see no basis for holding that a trial court is required—after a hearing where it has already announced who the prevailing and non-prevailing parties are and why—to allow the non-prevailing party one more opportunity to object to the court's final order.[6]

Third, while Eshoo argues that the failure of the March 8, 2024 orders to require sufficient bonds of $10,000 per defendant was the direct product of the trial court's "deviation" from rule 3.1312, we have already determined that the adequacy of the stated bonds had no bearing on the ability of CEF to propound discovery and the ability of the trial court to rule on a discovery motion. In other words, Eshoo cannot demonstrate any prejudice arising from the trial court's purported deviation from rule 3.1312. And for the same reason, we lend no weight to his argument that the trial court "failed to protect the trial court record." The record before us is more than sufficient to establish that the trial court had the authority to impose monetary sanctions on Eshoo for his conduct in discovery.

---

[6] As noted above, the trial court clarified at the August 21, 2024 hearing that it had already given Eshoo an opportunity to address the amount of the undertakings at the March 7, 2024 hearing.

## III.    DISPOSITION

The trial court's discovery sanctions order is affirmed.  Respondent CEF is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).

                                                  _____
                                                  CHUNG, J.*

WE CONCUR:


_____
DANNER, ACTING P. J.


_____
BROMBERG, J.


*Community Education Foundation v. Eshoo et al.*
H052717

_____

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.